EXECUTION VERSION

## SETTLEMENT AGREEMENT

This **SETTLEMENT AGREEMENT** (the "Agreement") dated as of September 26, 2012 is by and among (i) Canyon Port Holdings, LLC, a Texas limited liability company ("Canyon Holdings"), (ii) Canyon Supply & Logistics, LLC, a Texas limited liability company ("Canyon Supply," and together with Canyon Holdings, "Canyon"), (iii) Lawrence H. Ramming, individually and in his capacity as a representative of an equity owner in and as a manager of Canyon Holdings and Canyon Supply ("Ramming"), (iv) Richard Lee Fuqua, II, individually and in his capacity as a representative of an equity owner in and as a manager of Canyon Holdings and Canyon Supply ("Fuqua,"), (v) Jim Hayes, individually and in his capacity as a representative of an equity owner in Canyon Holdings and Canyon Supply ("Hayes," and together with Fuqua and Ramming, the "Managers"), (vi) Fuqua Family Limited Partnership, a Texas limited partnership, as a member of and equity interest owner in Canyon Holdings and Canyon Supply ("FFLP"), (vii) LHR Trust, as a member of and equity interest owner in Canyon Holdings and Canyon Supply ("LHRT"), (viii) CSL Associates, LLC, a Texas limited liability company, as a member of and equity interest owner in Canyon Holdings and Canyon Supply ("CSLA" and together with LHRT and FFLP, the "Members"), (ix) the Port of Corpus Christi Authority of Nueces County, Texas, a navigation district and political subdivision of the State of Texas (the "Port Authority"), and (x) Oxy Ingleside Property Holdings, LLC, a Delaware limited liability company ("Oxy Ingleside"). Canyon, the Managers, the Members, the Port Authority, and Oxy Ingleside are sometimes individually referred to herein as a "Party" and collectively as the "Parties."

## RECITALS

A.    The Port Authority owns fee interests in the real property commonly known as the former Naval Station Ingleside and certain undeveloped real property adjacent thereto, located in Nueces and San Patricio Counties, Texas and more specifically described on **Exhibit A** (all such property, together with all improvements, buildings, wharfs, quays, piers, bulkheads, docks (together with any breasting or mooring structures associated therewith), fixtures, walls, fences, landscaping, infrastructure, utilities and related facilities, and any personal property or other structures situated on, affixed to, or appurtenant to such property (as applicable), is herein collectively called the "Property").

B.    A Certificate of Formation Limited Liability Company [Document No. 270464800002] was filed with the Office of the Secretary of State of Texas (the "Secretary of State") on August 4, 2009, forming a Texas limited liability company whose name was Canyon Logistics & Supply, LLC.    Thereafter, a Certificate of Correction [Document No. 302092300002] was filed with the Secretary of State on April 5, 2010, in which the entity name was corrected to read Canyon Supply & Logistics, LLC.    Subsequently, a Certificate of Amendment [Document No. 400707850002] was filed with the Secretary of State on December 14, 2011, pursuant to which Canyon Supply & Logistics, LLC changed its entity name to Canyon Port Holdings, LLC.

C.    Canyon Supply filed its Certificate of Formation Limited Liability Company [Document No. 400903430002] with the Secretary of State on December 15, 2011.

**EXHIBIT**

**B**

tabbies®

**EXECUTION VERSION**

D.      Canyon Holdings entered into that certain Surplus Property Installment Sales Agreement dated May 2, 2011 (as the same may have been amended and/or modified, the "First Canyon Contract") with the Port Authority to purchase a portion of the Property.  The First Canyon Contract was terminated by Canyon Holdings on September 29, 2011.

E.      Canyon Holdings subsequently entered into that certain Surplus Property Installment Sales Agreement dated November 8, 2011 (as the same may have been amended and/or modified, the "Second Canyon Contract") with the Port Authority to purchase a portion of the Property, and on November 8, 2011, the Port Authority's governing body approved an Option Agreement with Canyon Holdings (the "Option Agreement," and together with the First Canyon Contract and the Second Canyon Contract, the "Canyon Contracts") which would have given Canyon Holdings an option to purchase portions of the Property if the Second Canyon Contract had closed.

F.      Pursuant to that certain Assignment of Surplus Property Installment Sales Agreement dated December 28, 2011, Canyon Holdings assigned to Canyon Supply all of Canyon Holding's interest in and rights under the Second Canyon Contract and the Property covered thereby.

G.      The Port Authority sent a notice of termination of the Second Canyon Contract on January 16, 2012.

H.      Oxy Ingleside and the Port Authority entered into that certain Surplus Property Sales Agreement dated May 8, 2012 (as the same may have been or may hereafter be amended and/or modified, the "First Oxy Ingleside Contract") and that certain Surplus Property Sales Agreement dated September 11, 2012 (as the same may have been or may hereafter be amended and/or modified, the "Oxy Ingleside Campus Contract," and together with the First Oxy Ingleside Contract, the "Oxy Ingleside Contracts").  The Oxy Ingleside Contracts set forth the terms and conditions upon which the Port Authority will sell to Oxy Ingleside a portion of the Property.

I.      On June 10, 2012, Canyon Holdings filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Corpus Christi Division (the "Bankruptcy Court").  On September 10, 2012, Canyon Supply filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.  Canyon Holdings' and Canyon Supply's respective bankruptcy cases (collectively, the "Bankruptcy Cases") are jointly administered under case no. 12-20314.

J.      The Parties enter into this Agreement to compromise and settle Canyon's assertion of an interest in all or any portion of the Property, to resolve claimed rights to specific performance under the Canyon Contracts, to agree upon a resolution of the Claims (as defined below) asserted by Canyon against the Port Authority, Oxy Ingleside, and other persons and entities relating to the Canyon Contracts and terminations thereof, to limit the risks, uncertainties, and inconvenience of litigation and appeals, and to resolve, *inter alia*, (i) any and all Claims, causes of action, and liabilities asserted or that could have been asserted by Canyon, the Canyon bankruptcy estates, the Managers, or the Members against (a) the Port Authority, (b)

US 1580442v.3

Oxy Ingleside, or (c) the Property (collectively, the "<u>Canyon Claims</u>"); (ii) any and all Claims, causes of action, and liabilities asserted or that could have been asserted by the Port Authority against Canyon, the Canyon bankruptcy estates, the Managers, or the Members (collectively, the "<u>Port Authority Claims</u>"); and (iii) any and all Claims, causes of action, and liabilities asserted or that could have been asserted by Oxy Ingleside against Canyon, the Canyon bankruptcy estates, the Managers, or the Members (collectively, the "<u>Oxy Ingleside Claims</u>").

## AGREEMENT

In consideration of the mutual covenants set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby mutually acknowledged, the Parties agree as follows:

**1.     Claim Definition**.  As used herein, "Claim" shall have the meaning given in Bankruptcy Code §101(5) and shall also include, without limitation, any and all (a) causes of action under chapter 5 of the Bankruptcy Code or similar state statutes and (b) rights of specific performance, rights to damages, or rights to other equitable relief.

**2.     Settlement.**

a.     **Payment by the Port Authority.**  On the Effective Date (as defined in Section 12), the Port Authority shall pay $3,500,000 to Canyon Holdings, for the benefit of itself, Canyon Supply, and the Canyon bankruptcy estates (the "<u>Settlement Payment</u>").  The Settlement Payment shall be made by wire transfer to an account designated by Canyon in writing and approved by the Bankruptcy Court.

b.     **Canyon Stipulations**.  Effective upon the Effective Date (and subject to the full and actual receipt of the Settlement Payment by Canyon Holdings), Canyon, the Canyon bankruptcy estates, the Managers, and the Members each agree and stipulate that: (i) they do not own or hold any interest in all or any portion of the Property, including, without limitation, any right or option to acquire all or any portion of the Property, whether legal, equitable, or otherwise, and any such interest has been released, extinguished, and expunged; (ii) no portion of the Property is property of the Canyon bankruptcy estates; (iii) they have no right to specific performance to be conveyed an interest in all or any portion of the Property and any such right has been released, extinguished, and expunged; (iv) the Canyon Contracts are not executory contracts subject to assumption and/or assignment under Bankruptcy Code § 365; (v) the Canyon Contracts have been terminated and are null, void, and of no further force or effect; and (vi) neither the Port Authority nor Oxy Ingleside has received any transfer of an interest in property of Canyon, the Canyon bankruptcy estates, the Managers, or the Members that is avoidable or recoverable under chapter 5 of the Bankruptcy Code or similar state statutes.  For the avoidance of doubt, in the event that the Effective Date does not occur, the stipulations of this Section 2(b) shall be null, void, inoperative and inadmissible for any purpose.

c.     **Attorneys' Fees**.  The attorneys for Canyon who were retained under the Bankruptcy Court-approved contingency fee agreement shall look only to the Canyon bankruptcy estates for payment of any fees or expenses owed.  All such fees and expenses shall

**EXECUTION VERSION**

only be paid from the Settlement Payment with no other person or entity, including, without limitation, the Port Authority and Oxy Ingleside, having any liability for payment of the same.

      **3.**      <u>**Port Authority Release.**</u>

            a.      **Release.**  Effective upon the Effective Date, the Port Authority, for itself and its predecessors, successors, assigns, legal representatives, commissioners, managers, partners, members, trustees, beneficiaries, owners, officers, directors, agents, consultants, attorneys, and employees (collectively, the "<u>Port Authority Releasing Parties</u>"), does hereby fully, finally, and forever release, acquit, and discharge Canyon, the Canyon bankruptcy estates, the Managers, and the Members and each of their respective predecessors, successors, assigns, and past and present legal representatives, managers, partners, members, trustees, beneficiaries, owners, officers, directors, agents, consultants, attorneys, and employees (collectively, the "<u>Port Authority Released Parties</u>") of and from any and all Claims (including, without limitation, the Port Authority Claims), causes of action, and liabilities, of any kind whatsoever, at common law, statutory, or otherwise, which any of the Port Authority Releasing Parties have or might have, or which may hereafter accrue in the future, whether known or unknown, asserted or not asserted, directly or indirectly attributable to, or arising out of or that are based in whole or in part on, any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date, and does hereby waive any right to, and covenants not to, sue any Port Authority Released Party with respect to such Claims, causes of action, and liabilities. For the avoidance of doubt, in the event that the Effective Date does not occur, the releases of this Section 3(a) shall be null, void, and inoperative.

            b.      **Complete Defense.**  The Port Authority understands and agrees that the releases set forth in Section 3(a) of this Agreement shall be treated as a full and complete defense to, and will forever be a complete bar to the commencement or prosecution of, any and all Claims, causes of action, and liabilities released herein.

            c.      **Unknown Claims.**  The Port Authority understands and agrees that there is a risk that, subsequent to the execution of this Agreement and the releases included herein, one or more of the Port Authority Releasing Parties will discover, incur, or suffer damage as to the Claims, causes of action, and liabilities released herein that were unknown or unanticipated at the time this Agreement was executed and that, if known by such releasing party on the date this Agreement is executed, may have materially affected the decision of the Port Authority to execute this Agreement. The Port Authority understands and agrees that, by reason of the releases agreed to by it herein, the Port Authority is assuming the risk of such unknown Claims, causes of action, and liabilities and agrees that its release of the Port Authority Released Parties applies to any and all such Claims, causes of action, and liabilities.

            d.      **Full and Complete Settlement.**  The Port Authority intends that the releases set forth in Section 3 of this Agreement be complete and not subject to a claim of mistake of fact and that such releases express a **FULL AND COMPLETE COMPROMISE AND SETTLEMENT** of the Claims, causes of action, and liabilities released herein. Regardless of the adequacy or inadequacy of the consideration paid, the releases included herein are intended to settle or avoid litigation and/or settle the Claims, causes of action, and liabilities released herein, and to be final and complete.

4

**EXECUTION VERSION**

4.      **Canyon Release.**

        a.      **Release.**  Effective upon the Effective Date, Canyon and the Canyon bankruptcy estates, for themselves and their respective subsidiaries, parents, affiliates, predecessors, successors (including any liquidating trust or liquidating trustee appointed under a chapter 11 plan of reorganization or liquidation, chapter 7 trustee, or any other successor including, without limitation, a successor appointed pursuant to the operation of the Bankruptcy Code), assigns, legal representatives, managers, partners, members, trustees, beneficiaries, owners, officers, directors, agents, consultants, attorneys, and employees (collectively, the "Canyon Releasing Parties"), do hereby fully, finally, and forever release, acquit, and discharge the Port Authority, Oxy Ingleside, and each of their respective subsidiaries, parents, affiliates, predecessors, successors, assigns, and past and present legal representatives, commissioners, managers, partners, members, trustees, beneficiaries, owners, officers, directors, agents, consultants, attorneys, and employees (collectively, the "Canyon Released Parties") and the Property of and from any and all Claims (including, without limitation, the Canyon Claims), causes of action, and liabilities of any kind whatsoever, at common law, statutory, or otherwise, including, without limitation, causes of action under chapter 5 of the Bankruptcy Code or similar state statutes, which any of the Canyon Releasing Parties have or might have, or which may hereafter accrue in the future, whether known or unknown, asserted or not asserted, directly or indirectly attributable to, or arising out of or that are based in whole or in part on, any act, omission, transaction, transfer, event, or other occurrence taking place on or prior to the Effective Date, and hereby waive any right to, and covenant not to, sue any Canyon Released Party with respect to such Claims, causes of action, and liabilities.  For the avoidance of doubt, in the event that the Effective Date does not occur, the releases of this Section 4(a) shall be null, void, and inoperative.

        b.      **Complete Defense.**  Canyon understands and agrees that the releases set forth in Section 4(a) of this Agreement shall be treated as a full and complete defense to, and will forever be a complete bar to the commencement or prosecution of, any and all Claims, causes of action, and liabilities released herein.

        c.      **Unknown Claims.**  Canyon understands and agrees that there is a risk that, subsequent to the execution of this Agreement and the releases included herein, one or more of the Canyon Releasing Parties will discover, incur, or suffer damage as to the Claims, causes of action, and liabilities released herein that were unknown or unanticipated at the time this Agreement was executed and that, if known by such Canyon Releasing Party on the date this Agreement is executed, may have materially affected the decision of Canyon to execute this Agreement.  Canyon understands and agrees that, by reason of the releases agreed to by them herein, Canyon is assuming the risk of such unknown Claims, causes of action, and liabilities and agrees that its release of the Canyon Released Parties applies to any and all such Claims, causes of action, and liabilities.

        d.      **Full and Complete Settlement.**  Canyon intends that the releases set forth in Section 4 of this Agreement be complete and not subject to a claim of mistake of fact and that such releases express a **FULL AND COMPLETE COMPROMISE AND SETTLEMENT** of the Claims, causes of action, and liabilities released herein.  Regardless of the adequacy or inadequacy of the consideration paid, the releases included herein are intended to settle or avoid

5

**EXECUTION VERSION**

litigation and/or settle the Claims, causes of action, and liabilities released herein, and to be final and complete.

5.   **Oxy Ingleside Release**.

a.   **Release.**  Effective upon the Effective Date, Oxy Ingleside, for itself and its predecessors, successors, assigns, legal representatives, managers, members, owners, officers, directors, agents, consultants, attorneys, and employees (collectively, the "Oxy Ingleside Releasing Parties"), does hereby fully, finally, and forever release, acquit, and discharge Canyon, the Canyon bankruptcy estates, the Managers, and the Members and each of their respective predecessors, successors, assigns, and past and present legal representatives, managers, partners, members, trustees, beneficiaries, owners, officers, directors, agents, consultants, attorneys, and employees (collectively, the "Oxy Ingleside Released Parties") of and from any and all Claims (including, without limitation, the Oxy Ingleside Claims), causes of action, and liabilities, of any kind whatsoever, at common law, statutory, or otherwise, which any of the Oxy Ingleside Releasing Parties have or might have, or which may hereafter accrue in the future, whether known or unknown, asserted or not asserted, directly or indirectly attributable to, or arising out of or that are based in whole or in part on, any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date, and does hereby waive any right to, and covenants not to, sue any Oxy Ingleside Released Party with respect to such Claims, causes of action, and liabilities.  For the avoidance of doubt, in the event that the Effective Date does not occur, the releases of this Section 5(a) shall be null, void, and inoperative.

b.   **Complete Defense.**  Oxy Ingleside understands and agrees that the releases set forth in Section 5(a) of this Agreement shall be treated as a full and complete defense to, and will forever be a complete bar to the commencement or prosecution of, any and all Claims, causes of action, and liabilities released herein.

c.   **Unknown Claims.**  Oxy Ingleside understands and agrees that there is a risk that, subsequent to the execution of this Agreement and the releases included herein, one or more of the Oxy Ingleside Releasing Parties will discover, incur, or suffer damage as to the Claims, causes of action, and liabilities released herein that were unknown or unanticipated at the time this Agreement was executed and that, if known by such releasing party on the date this Agreement is executed, may have materially affected the decision of Oxy Ingleside to execute this Agreement. Oxy Ingleside understands and agrees that, by reason of the releases agreed to by it herein, Oxy Ingleside is assuming the risk of such unknown Claims, causes of action, and liabilities and agrees that its release of the Oxy Ingleside Released Parties applies to any and all such Claims, causes of action, and liabilities.

d.   **Full and Complete Settlement.**  Oxy Ingleside intends that the releases set forth in Section 5 of this Agreement be complete and not subject to a claim of mistake of fact and that such releases express a **FULL AND COMPLETE COMPROMISE AND SETTLEMENT** of the Claims, causes of action, and liabilities released herein.  Regardless of the adequacy or inadequacy of the consideration paid, the releases included herein are intended to settle or avoid litigation and/or settle the Claims, causes of action, and liabilities released herein, and to be final and complete.

6

US 1580442v.3

EXECUTION VERSION

6.    <u>**Managers Release**</u>.

a.    <u>**Release.**</u>  Effective upon the Effective Date, the Managers, for themselves and their respective subsidiaries, parents, affiliates, predecessors, successors, assigns, legal representatives, managers, partners, members, trustees, beneficiaries, owners, officers, directors, agents, consultants, attorneys, and employees (collectively, the "<u>Manager Releasing Parties</u>"), do hereby fully, finally, and forever release, acquit, and discharge the Port Authority, Oxy Ingleside, and each of their respective subsidiaries, parents, affiliates, predecessors, successors, assigns, and past and present legal representatives, commissioners, managers, partners, members, trustees, beneficiaries, owners, officers, directors, agents, consultants, attorneys, and employees (collectively, the "<u>Manager Released Parties</u>") and the Property of and from any and all Claims (including, without limitation, the Canyon Claims), causes of action, and liabilities of any kind whatsoever, at common law, statutory, or otherwise, including, without limitation, causes of action under chapter 5 of the Bankruptcy Code or similar state statutes, which any of the Manager Releasing Parties have or might have, or which may hereafter accrue in the future, whether known or unknown, asserted or not asserted, directly or indirectly attributable to, or arising out of or that are based in whole or in part on, any act, omission, transaction, transfer, event, or other occurrence taking place on or prior to the Effective Date, and hereby waive any right to, and covenant not to, sue any Manager Released Party with respect to such Claims, causes of action, and liabilities.  For the avoidance of doubt, in the event that the Effective Date does not occur, the releases of this Section 6(a) shall be null, void, and inoperative.

b.    <u>**Complete Defense.**</u>  The Managers understand and agree that the releases set forth in Section 6(a) of this Agreement shall be treated as a full and complete defense to, and will forever be a complete bar to the commencement or prosecution of, any and all Claims, causes of action, and liabilities released herein.

c.    <u>**Unknown Claims.**</u>  The Managers understand and agree that there is a risk that, subsequent to the execution of this Agreement and the releases included herein, one or more of the Manager Releasing Parties will discover, incur, or suffer damage as to the Claims, causes of action, and liabilities released herein that were unknown or unanticipated at the time this Agreement was executed and that, if known by such Manager Releasing Party on the date this Agreement is executed, may have materially affected the decision of the Managers to execute this Agreement.  The Managers understand and agree that, by reason of the releases agreed to by them herein, the Managers are assuming the risk of such unknown Claims, causes of action, and liabilities and agree that their release of the Manager Released Parties applies to any and all such Claims, causes of action, and liabilities.

d.    <u>**Full and Complete Settlement.**</u>  The Managers intend that the releases set forth in Section 6 of this Agreement be complete and not subject to a claim of mistake of fact and that such releases express a **FULL AND COMPLETE COMPROMISE AND SETTLEMENT** of the Claims, causes of action, and liabilities released herein.  Regardless of the adequacy or inadequacy of the consideration paid, the releases included herein are intended to settle and/or avoid litigation and/or settle the Claims, causes of action, and liabilities released herein, and to be final and complete.

7

**EXECUTION VERSION**

7.    **Members Release**.

a.    **Release.**  Effective upon the Effective Date, the Members, for themselves and their respective subsidiaries, parents, affiliates, predecessors, successors, assigns, legal representatives, managers, partners, members, trustees, beneficiaries, owners, officers, directors, agents, consultants, attorneys, and employees (collectively, the "Member Releasing Parties"), do hereby fully, finally, and forever release, acquit, and discharge the Port Authority, Oxy Ingleside, and each of their respective subsidiaries, parents, affiliates, predecessors, successors, assigns, and past and present legal representatives, commissioners, managers, partners, members, trustees, beneficiaries, owners, officers, directors, agents, consultants, attorneys, and employees (collectively, the "Member Released Parties") and the Property of and from any and all Claims (including, without limitation, the Canyon Claims), causes of action, and liabilities of any kind whatsoever, at common law, statutory, or otherwise, including, without limitation, causes of action under chapter 5 of the Bankruptcy Code or similar state statutes, which any of the Member Releasing Parties have or might have, or which may hereafter accrue in the future, whether known or unknown, asserted or not asserted, directly or indirectly attributable to, or arising out of or that are based in whole or in part on, any act, omission, transaction, transfer, event, or other occurrence taking place on or prior to the Effective Date, and hereby waive any right to, and covenant not to, sue any Member Released Party with respect to such Claims, causes of action, and liabilities.  For the avoidance of doubt, in the event that the Effective Date does not occur, the releases of this Section 7(a) shall be null, void, and inoperative.

b.    **Complete Defense.**  The Members understand and agree that the releases set forth in Section 7(a) of this Agreement shall be treated as a full and complete defense to, and will forever be a complete bar to the commencement or prosecution of, any and all Claims, causes of action, and liabilities released herein.

c.    **Unknown Claims.**  The Members understand and agree that there is a risk that, subsequent to the execution of this Agreement and the releases included herein, one or more of the Member Releasing Parties will discover, incur, or suffer damage as to the Claims, causes of action, and liabilities released herein that were unknown or unanticipated at the time this Agreement was executed and that, if known by such Member Releasing Party on the date this Agreement is executed, may have materially affected the decision of the Members to execute this Agreement.  The Members understand and agree that, by reason of the releases agreed to by them herein, the Members are assuming the risk of such unknown Claims, causes of action, and liabilities and agree that their release of the Member Released Parties applies to any and all such Claims, causes of action, and liabilities.

d.    **Full and Complete Settlement.**  The Members intend that the releases set forth in Section 7 of this Agreement be complete and not subject to a claim of mistake of fact and that such releases express a **FULL AND COMPLETE COMPROMISE AND SETTLEMENT** of the Claims, causes of action, and liabilities released herein.  Regardless of the adequacy or inadequacy of the consideration paid, the releases included herein are intended to settle or avoid litigation and/or settle the Claims, causes of action, and liabilities released herein, and to be final and complete.

8

EXECUTION VERSION

**8.** **Obligations Under Agreement**: Notwithstanding the releases set forth in Sections 3, 4, 5, 6, and 7 of this Agreement, nothing herein shall release any Party hereto from its respective obligations under this Agreement.

**9.** **Representations.**

a.     The Port Authority declares, represents, and warrants to Canyon, the Canyon bankruptcy estates, the Managers, and the Members, effective as of the date of the execution of this Agreement and as of the Effective Date, as follows:

i.     Subject to Section 10 below, the Port Authority has full power and authority to execute this Agreement and perform all of its obligations set forth herein.

ii.     No further organizational action or approval, except for the entry of the Approval Order (as defined in Section 10), is necessary on the part of the Port Authority to execute and deliver this Agreement, to be bound by its terms, or to perform its obligations set forth herein.

iii.     Prior to the date of this Agreement, the Port Authority fully informed itself as to the terms, contents, provisions, and effects of this Agreement and has had the benefit of the advice of an attorney or attorneys chosen and employed by the Port Authority concerning this Agreement.

iv.     No promise or representation of any kind has been made to the Port Authority or its representatives by Canyon, the Canyon bankruptcy estates, the Managers, or the Members, or their respective representatives, except as expressly set forth in this Agreement.

v.     The Port Authority is the sole owner and holder of the Claims, causes of action, and liabilities it is releasing under this Agreement, and none of those Claims, causes of action, and liabilities have been assigned, pledged, encumbered, or otherwise transferred, in whole or in part, to any other person or entity.

vi.     Other than the Oxy Ingleside Contracts, the Port Authority is not a party to any contracts to sell all or any portion of the Property.

b.     Canyon, the Canyon bankruptcy estates, the Managers, and the Members each declare, represent, and warrant, on a joint and several basis, to the Port Authority and Oxy Ingleside, effective as of the date of the execution of this Agreement and as of the Effective Date, as follows:

i.     Subject to Section 10 below, each of Canyon, the Canyon bankruptcy estates, the Managers, and the Members has full power and authority to execute this Agreement and perform all of its respective obligations set forth herein.

9

**EXECUTION VERSION**

ii.      No further limited liability company, partnership, trust, individual or other organizational action or approval, except for the entry of the Approval Order, is necessary on the part of any of Canyon, the Canyon bankruptcy estates, the Managers, or the Members to execute and deliver this Agreement, to be bound by its terms, or to perform their respective obligations set forth herein.

iii.     Prior to the date of this Agreement, each of Canyon, the Canyon bankruptcy estates, the Managers, and the Members fully informed themselves as to the terms, contents, provisions, and effects of this Agreement.

iv.     Prior to the date of this Agreement, each of Canyon, the Canyon bankruptcy estates, the Managers, and the Members has had the benefit of the advice of an attorney or attorneys chosen and employed by Canyon, the Canyon bankruptcy estates, the Managers, and/or the Members concerning this Agreement.

v.      No promise or representation of any kind has been made to any of Canyon, the Canyon bankruptcy estates, the Managers, the Members or their representatives by the Port Authority or Oxy Ingleside or their respective representatives, except as expressly set forth in this Agreement.

vi.     Canyon, the Canyon bankruptcy estates, the Managers, and the Members, collectively and/or severally, are the sole owners and holders of the Claims, causes of action, and liabilities they are releasing under this Agreement, and none of those Claims, causes of action, and liabilities have been assigned, pledged, encumbered, or otherwise transferred, in whole or in part, to any other person or entity.

vii.     Ramming and Fuqua are the sole managers or authorized officers of Canyon Holdings and Canyon Supply, with full power to act on behalf of and bind Canyon Holdings and Canyon Supply.

viii.    Ramming, Fuqua, and Hayes are the authorized representatives of the Members, with full power to act on behalf of and bind the Members.

ix.     Canyon Holdings does not own an interest in any other entities.

x.      Canyon Supply does not own an interest in any other entities.

xi.     Canyon Port Management, LLC, a Texas limited liability company ("Canyon Management") and Canyon Port Realty, LLC, a Texas limited liability company ("Canyon Realty"), are affiliates of Canyon within the meaning of Bankruptcy Code § 101(2). None of Canyon, the Canyon bankruptcy estates, the Managers, or the Members have an ownership interest in or are affiliated with Canyon Realty, L.L.C., a Texas limited liability company formed on May 24, 2002 ("Dallas Canyon Realty").

10

**EXECUTION VERSION**

None of Canyon Management, Canyon Realty, or Dallas Canyon Realty has any agreements (written or verbal) with Canyon or the Canyon bankruptcy estates.

xii.     Canyon, the Canyon bankruptcy estates, the Managers, and the Members have not assigned, pledged, or otherwise encumbered any interest in the Canyon Contracts to any other person or entity, and currently own any and all rights in, to and under the Canyon Contracts.

xiii.     Any contracts or agreements, whether written (regardless if such written document is signed or unsigned) or verbal, made or purported to have been made, by and between Canyon and any third persons or entities, including, without limitation, any contracts or agreements with Canyon Management, Canyon Realty, Waller Max Holdings, LLC, Max Financial, LLC, Waller Marine, Inc., and Diversity Max, LLC (collectively, the "Third Party Contract Parties"), relating to all or any portion of the Property (collectively, the "Third Party Contracts") have been terminated and regardless are no longer in full force and effect.

xiv.     Other than the Canyon Contracts and the Third Party Contracts, none of Canyon, the Canyon bankruptcy estates, the Managers, the Members, or any of their respective affiliates (including, without limitation, Canyon Management and Canyon Realty), is a party to any contract, agreement, option, or undertaking relating to all or any portion of the Property.

xv.     The Members collectively own all of the issued and outstanding equity interests in Canyon Holdings and Canyon Supply.

xvi.     Other than any rights or interests that Canyon and the Canyon bankruptcy estates have asserted in the Property that are to be released on the Effective Date pursuant to this Agreement, none of Canyon, the Canyon bankruptcy estates, the Managers, the Members, or any of their respective affiliates (including, without limitation, Canyon Management and Canyon Realty) has any interest, legal, equitable, or otherwise, in all or any portion of the Property or any right or option to acquire all or any portion of the Property, and none of Canyon, the Canyon bankruptcy estates, the Managers, the Members, or any of their respective affiliates (including, without limitation, Canyon Management and Canyon Realty) have filed or recorded any document or *lis pendens* against all or any portion of the Property.

xvii.     Except for Claims in the Bankruptcy Cases, to Canyon's, the Managers', and the Members' respective knowledge, there are no pending or threatened Claims, causes of action, suits or proceedings by any other third party against or affecting the Property or any portion thereof in any court or before any federal, state, county or municipal department,

11

EXECUTION VERSION

commission, board, bureau or agency or other governmental instrumentality.

xviii.   To Canyon's, the Managers', and the Members' respective knowledge, none of Tim Clower, George B. Clower, or any person or entity owned by or affiliated with Tim Clower or George B. Clower have any Claims against the Port Authority or Oxy Ingleside pertaining to all or any portion of the Property or any Claims that would affect all or any portion of the Property.

xix.   Each and every known creditor and equity interest holder of Canyon and the Canyon bankruptcy estates is listed in the Schedules of Assets and Liabilities and Statements of Financial Affairs filed by Canyon in the Bankruptcy Cases, and there are no other known parties in interest who should receive notice of the Bankruptcy Cases or this Agreement.

10.    **Bankruptcy Court Approval.**   The enforceability and effectiveness of this Agreement shall be contingent upon entry by the Bankruptcy Court of an order (the "Approval Order") (a) approving this Agreement pursuant to Bankruptcy Code §§ 105, 362(d), and 363(b) and Bankruptcy Rules 4001, 6004, 9014, and 9019 and (b) granting relief from the automatic stay of Bankruptcy Code § 362(a) to allow the consummation of this Agreement and to provide for the closing of all or any part of the Property to Oxy Ingleside under the Oxy Ingleside Contracts.   The Approval Order shall be in substantially in the form of the proposed order attached hereto as **Exhibit B** and otherwise in form and substance satisfactory to Canyon, the Port Authority, and Oxy Ingleside.   Within one (1) business day after the execution of this Agreement, Canyon and the Port Authority shall file pleadings in the form of the pleadings attached hereto as **Exhibit C** requesting the entry of the Approval Order, and Canyon shall serve all such filed pleadings on all creditors of, and equity interest holders in, Canyon and the Canyon bankruptcy estates and the Third Party Contract Parties.   The Port Authority and Oxy Ingleside agree to cooperate and assist with, and to support, the entry of the Approval Order.

11.    **Conditions Precedent to the Effective Date**.   The following are the conditions precedent to the Effective Date:

a.    The Bankruptcy Court shall have entered the Approval Order and the Approval Order shall have become a final and non-appealable order and not subject to a stay.

b.    Oxy Ingleside (or an affiliate, successor, or assignee of Oxy Ingleside) shall have closed on its acquisition of the applicable portion of the Property set out in the First Oxy Ingleside Contract (the "Oxy Ingleside Closing").

c.    The Settlement Payment, in good funds, shall have been received by Canyon Holdings, as evidenced by a bank wire transfer confirmation number in the form of a federal reference number or a CHIPS sequence number.

12.    **Occurrence of Effective Date**.   The effective date shall be deemed to have occurred on the day (after full satisfaction of the conditions precedent set forth in Section 11) of the Oxy Ingleside Closing (the "Effective Date"); provided, however, in order to facilitate the

12

**EXECUTION VERSION**

Oxy Ingleside Closing, the stipulations and releases set forth in Sections 2(b), 3, 4, 5, 6, and 7 of this Agreement shall be deemed effective immediately prior to the delivery of the special warranty deed conveying the applicable portion of the Property from the Port Authority to Oxy Ingleside set out in the First Oxy Ingleside Contract (the "Special Warranty Deed"). Recordation of the Special Warranty Deed in the real property records of San Patricio County and Nueces County, Texas shall be conclusive evidence of the occurrence of the Effective Date.

13. **Effect of Failure of Conditions**. In the event one or more of the conditions precedent specified in Section 11 of this Agreement shall not have occurred on or before November 15, 2012, this Agreement shall become void and of no further force or effect (the "Termination Date").

14. **Third Party Beneficiaries**. The Port Authority Released Parties, the Canyon Released Parties, the Oxy Ingleside Released Parties, the Manager Released Parties, the Member Released Parties, and any title insurance companies or title insurance agents that issue a title insurance policy in favor of Oxy Ingleside related to all or any portion of the Property shall be third party beneficiaries of this Agreement in all respects. Other than as set forth in the preceding sentence, the provisions of this Agreement are not intended to benefit any person or entity not party hereto. Furthermore, nothing in this Agreement is intended to, nor shall it cause, any of the Port Authority Released Parties or the Oxy Ingleside Released Parties to be or be deemed to be a third party beneficiary of the Oxy Ingleside Contracts, and each of Canyon, the Canyon bankruptcy estates, the Managers, and the Members hereby expressly disclaim any rights of a third party beneficiary under the Oxy Ingleside Contracts.

15. **Standstill**. During the period of time between the date of this Agreement and the Termination Date, the Parties shall not initiate any actions against one another to assert any Claims, causes of action, or liabilities that are to be released upon the Effective Date; provided, that, each Party may bring any action necessary to enforce this Agreement in their respective discretion.

16. **Modifications.** This Agreement may not be modified, amended, revised, extended, supplemented, or terminated except in a writing signed by all of the Parties.

17. **No Admission.** By entering into this Agreement, no Party is in any way admitting any liability to any other Party on account of any matter covered by this Agreement. Rather, this Agreement is entered into solely for the purpose of compromise and settlement, to buy peace, and to avoid and reduce the risks and uncertainties of litigation.

18. **Choice of Law and Forum. THIS AGREEMENT AND ALL MATTERS ARISING OUT OF OR RELATING TO THIS AGREEMENT SHALL BE GOVERNED BY AND INTERPRETED, AND CONSTRUED IN ACCORDANCE WITH THE PROCEDURAL AND SUBSTANTIVE LAWS OF THE STATE OF TEXAS WITHOUT REFERENCE TO ITS PRINCIPLES AS TO CHOICE OR CONFLICTS OF LAW, AND IT HAS BEEN ENTERED INTO BY THE PARTIES IN RECOGNITION OF SUCH LAWS. FOR SO LONG AS THE BANKRUPTCY CASES ARE PENDING, THE PARTIES IRREVOCABLY SELECT THE BANKRUPTCY COURT AS THE SOLE JUDICIAL FORUM FOR THE ADJUDICATION OF ANY MATTERS ARISING**

US 1580442v.3

**EXECUTION VERSION**

UNDER OR IN CONNECTION WITH THIS AGREEMENT, AND CONSENT TO THE EXCLUSIVE JURISDICTION OF THE BANKRUPTCY COURT. THEREAFTER, OR IF THE BANKRUPTCY COURT ELECTS NOT TO EXERCISE JURISDICTION, THE PARTIES HEREBY IRREVOCABLY SUBMIT TO THE NON-EXCLUSIVE JURISDICTION OF ANY STATE OR FEDERAL COURT SITTING IN NUECES COUNTY, TEXAS WITH RESPECT TO ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT.

19.    **Further Assurances**. Each Party agrees to take or cause to be taken any and all action and to execute and deliver any and all additional documents, instruments, and writings that are reasonably necessary to consummate, make effective, and carry out the terms and provisions of this Agreement, including, without limitation, filing by Canyon of such motions as may be required under Bankruptcy Code § 365 in order to reject any Third Party Contract.

20.    **Entire Agreement**. This Agreement, including, without limitation, all recitals set forth herein, represents the entire agreement and understanding between the Parties with respect to the compromise and settlement described herein and any other matters related thereto and supersedes any and all prior and contemporaneous agreements, representations, negotiations, promises, inducements, or other communications, whether written or oral, relating to those matters, in whole or in part.

21.    **Binding Effect.** The Parties acknowledge that this Agreement is executed after extensive negotiations by and among representatives of the Parties; therefore, no Party shall be charged with having drafted or promulgated this Agreement. This Agreement shall be binding upon the Parties (and, in the case of Canyon, the Canyon bankruptcy estates, including, without limitation, any liquidating trust or liquidating trustee appointed under a chapter 11 plan of reorganization or liquidation, chapter 7 trustee, or any other successor including, without limitation, a successor appointed pursuant to the operation of the Bankruptcy Code) and the assignees and successors of the Parties.

22.    **Waiver.** No waiver by any of the Parties of any breach by the other Party of any term, condition or obligation set forth in this Agreement shall be deemed a waiver of that provision or any other provision of this Agreement or a waiver of the same or similar breach thereafter unless such waiver is in writing and signed by the waiving Party.

23.    **Severability.** Except for Sections 10, 11, and 12, if any term or condition of this Agreement is held to be invalid or unenforceable for any reason, it shall be deemed severed from this Agreement and the remaining terms and conditions of this Agreement shall not be affected thereby and shall be deemed valid and enforceable to the fullest extent permitted by law.

24.    **Notices.** Except as otherwise provided herein, any notices required or permitted to be sent hereunder shall be delivered personally; mailed, certified mail, return receipt requested; sent by facsimile; or delivered by overnight courier service to the following addresses, or such other address as either Party designates by written notice, and shall be deemed to have been given or made (i) upon delivery, if delivered personally; (ii) two business days after mailing, if mailed; (iii) one business day after transmission, if delivered by facsimile, or (iv) one business day after delivery to the courier, if delivered by overnight courier service:

US 1580442v.3

**EXECUTION VERSION**

**If to Canyon:**

Richard Lee Fuqua, II
Fuqua & Associates
5005 Riverway Suite 250
Houston, TX 77056
Tel.: 713.960.0277
Fax: 713.960.1064

With a copy to:

Shelby A. Jordan
Harlin C. Womble
Jordan, Hyden, Womble, Culbreth & Holzer, P.C.
500 North Shoreline Boulevard, Suite 900
Corpus Christi, TX 78471
Tel.: 361. 884.5678
Fax: 361.888.5555
E-mail: sjordan@jhwclaw.com, hwomble@jhwclaw.com

**If to the Managers:**

Lawrence H. Ramming
5729 Indian Circle
Houston, TX 77057

Richard Lee Fuqua, II
Fuqua & Associates
5005 Riverway Suite 250
Houston, TX 77056
Tel.: 713.960.0277
Fax: 713.960.1064

Jim Hayes
P.O. Box 22858
Beaumont, TX 77720

**If to the Members:**

Fuqua Family Limited Partnership
c/o Richard Lee Fuqua, II
Fuqua & Associates
5005 Riverway Suite 250
Houston, TX 77056
Tel.: 713.960.0277
Fax: 713.960.1064

15

US 1580442v.3

**EXECUTION VERSION**

LHR Trust
5729 Indian Circle
Houston, TX 77057

CSL Associates, LLC
P.O. Box 22858
Beaumont, TX 77720

**If to the Port Authority:**

Port of Corpus Christi Authority
Attn: Executive Director
222 Power Street
Corpus Christi, TX 78401

With a copy to:

Jimmy Welder
Welder Leshin Lorenz McNiff Buchanan  Hawn LLP
Suite 300 North
800 North Shoreline Blvd.
Corpus Christi, TX 78401
Tel.: 361.561.8002
Fax: 361.561.8001
E-mail: jwelder@welderleshin.com

**If to Oxy Ingleside:**

Oxy Ingleside Property Holdings, LLC
c/o Occidental Petroleum Corporation
10889 Wilshire Boulevard
Los Angeles, CA 90024
Attn: Hasham Mukadam
Fax: 310.443.6122

With copies to:

Occidental Petroleum Corporation
10889 Wilshire Boulevard
Los Angeles, CA 90024
Attn: General Counsel
Fax: 310.443.6122

16

**EXECUTION VERSION**

> Paul E. Heath
> Vinson & Elkins LLP
> Trammell Crow Center
> 2001 Ross Ave., Suite 3700
> Dallas, TX 75201-2975
> Tel.: 214.220.7976
> Fax:214.999.7976
> Email: pheath@velaw.com

    **25.**    **Headings.**  The headings in this Agreement are for the convenience of the reader only and do not form a substantive part of this Agreement or in any way affect the meaning or interpretation hereof.

    **26.**    **Counterparts.**    This Agreement may be executed by delivery of actual, photocopier, or facsimile signatures and in any number of counterparts by the Parties using different signature pages, all of which together shall constitute one and the same agreement. Any of the Parties may execute this Agreement by signing any such counterpart and each of the counterparts shall for all purposes be deemed an original.

US 1580442v.3

The Parties have executed and delivered this Agreement as of the date first above written.

**CANYON PORT HOLDINGS, LLC**

By: _____

Name: _____

Title: _____

**CANYON SUPPLY & LOGISTICS, LLC**

By: _____

Name: _____

Title: _____

US 1580442v.3

**LAWRENCE H. RAMMING**

> Individually and in his capacity as a representative of an equity owner in and as a manager of Canyon Holdings and Canyon Supply

By:

Name: _LAWRENCE H RAMMING_

**RICHARD LEE FUQUA, II**

> Individually and in his capacity as a representative of an equity owner in and as a manager of Canyon Holdings and Canyon Supply

By:

Name: _Richard Lee FUQUA, II_

**JIM HAYES**

> Individually and in his capacity as a representative of an equity owner in Canyon Holdings and Canyon Supply

By: _____

Name: _____

US 1580442v.3

**LAWRENCE H. RAMMING**

> Individually and in his capacity as a representative of an equity owner in and as a manager of Canyon Holdings and Canyon Supply

By: _____

Name: _____

**RICHARD LEE FUQUA, II**

> Individually and in his capacity as a representative of an equity owner in and as a manager of Canyon Holdings and Canyon Supply

By: _____

Name: _____

**JIM HAYES**

> Individually and in his capacity as a representative of an equity owner in Canyon Holdings and Canyon Supply

By: _____

Name: _____

**FUQUA FAMILY LIMITED PARTNERSHIP**

As a member of and equity interest owner in
Canyon Holdings and Canyon Supply

By: _____

Name: Richard L. Fuqua

Title: President of General Partner

**LHR TRUST**

As a member of and equity interest owner in
Canyon Holdings and Canyon Supply

By: _____

Name: LHR Ramming

Title: Trustee

**CSL ASSOCIATES, LLC**

As a member of and equity interest owner in
Canyon Holdings and Canyon Supply

By: _____

Name: _____

Title: _____

US 1580442v.3

**FUQUA FAMILY LIMITED PARTNERSHIP**

As a member of and equity interest owner in
Canyon Holdings and Canyon Supply

By:      _____
Name: _____
Title:   _____

**LHR TRUST**

As a member of and equity interest owner in
Canyon Holdings and Canyon Supply

By:      _____
Name: _____
Title:   _____

**CSL ASSOCIATES, LLC**

As a member of and equity interest owner in
Canyon Holdings and Canyon Supply

By:      _____
Name: _____ Tim HAYES _____
Title:   _____ MANAGER _____

**PORT OF CORPUS CHRISTI AUTHORITY OF NUECES COUNTY, TEXAS,**

By: _____

Name: John P. LaRue

Title: Executive Director

**OXY INGLESIDE PROPERTY HOLDINGS, LLC**

By: _____

Name: Hasham Mukadam

Title: President

**PORT OF CORPUS CHRISTI AUTHORITY OF NUECES COUNTY, TEXAS**

By: _____

Name: John P. LaRue

Title: Executive Director

**OXY INGLESIDE PROPERTY HOLDINGS, LLC**

By: _Hasham Mukadam_

Name: Hasham Mukadam

Title: President

## EXHIBIT A

### Property Description

### TRACT 1
(478.551 Acres)

A 478.551 acre tract of land, more or less, herein designated Tract I, being the remainder of 483.158-acres known as Tract I as described in a deed to The Department of The Navy as recorded in Volume 2081, Page 483, Deed Records, Nueces County, Texas and being out of the L. Von Zacharias Survey 1, Abstract 271 and the T.H. Judson Survey 63, Abstract 177, both in San Patricio County, Texas, said 478.551-acre tract being more particularly described by metes and bounds as follows;

**BEGINNING** at a concrete monument with a square brass plate stamped "14.86" found in the west right-of-way of F.M. Road 1069 at the southwest area of the intersection with F.M. 2725 for the most southerly northeast corner of this tract, said monument having coordinates of N 17195295.81, E 1406451.58, Texas State Plane Coordinates, South Zone, NAD 83;

**THENCE,** S-21°-18'-43"-W, along said west right-of-way, a distance of **1216.17'** to a concrete monument with a square brass plate found for a bend point in said right-of-way and a bend point in the east line of this tract;

**THENCE,** S-21°-09'-10"-W, continuing along said right-of-way and along the west line of a called 40-acre tract described in a deed to the State of Texas as recorded in Volume 195, Page 19, Deed Records, San Patricio County, Texas, at 541.46' pass a found concrete monument with a square brass plate, in all a distance of **1610.15'** to a concrete monument with a square brass plate found for an exterior corner in the east line of this tract;

**THENCE,** N-68°-51'-00"-W, a distance of **249.35'** to a concrete monument with a square brass plate found for an interior corner of this tract;

**THENCE,** S-21°-08'-35"-W, a distance of **191.54'** to a monument with a cap stamped "OXY Ingleside Property Holdings", herein after referred to as "an OXY monument", set at the time of this survey to replace the original found property marker in the north line of the current Flint Hills facility described in a deed to Koch Refining Company, L.P. as recorded in Clerks File #447427, Real Property Records, San Patricio County, Texas for an exterior of this tract;

**THENCE,** N-68°-54'-55"-W, at 86.04' pass a concrete monument with a square brass plate found for the northwest corner of said Flint Hills tract and the northeast corner of a 1.62-acre tract of land out of said Tract I described as Parcel A in a deed to Flint Hills Resources Corpus Christi, LLC as recorded in Clerks File #606859, Official Public Records, San Patricio, Texas, in all a distance of **105.04'** to an OXY monument set for an interior corner of this tract;

**THENCE,** S-21°-08'-40"-W, a distance of **2505.41'** to an OXY monument set for an interior corner of said Parcel A and an exterior corner of this tract;

US 1580442v.3

THENCE, N-68°-51'-30"-W, a distance of **260.90'** to an OXY monument set for an exterior corner of said Parcel A and an interior corner of this tract;

THENCE, S-65°-41'-03"-W, a distance of **16.86'** to an OXY monument for an exterior corner of said Parcel A and an interior corner of this tract;

THENCE, S-21°-08'-50"-W, at 812.38' pass a 5/8" steel rod found for the southwest corner of said Parcel A and the northwest corner of Parcel B as recorded in the same deed, in all a distance of **855.93'** to an OXY monument set for an exterior corner of said Parcel B and an interior corner of this tract;

THENCE, S-81°-27'-49"-E, a distance of **20.23'** to an OXY monument set for an interior corner of said Parcel B and an exterior corner of this tract;

THENCE, S-07°-57'-56"-W, a distance of **138.38'** to an OXY monument set for an interior corner of said Parcel B and an exterior corner of this tract;

THENCE, N-82°-02'-54"-W, a distance of **168.65'** to an OXY monument set for an exterior corner of said Parcel B and an interior corner of this tract;

THENCE, S-07°-57'-06"-W, at 64.41' pass an OXY monument set for a 15.00' offset to the corner, in all a distance of **79.41'** to a point on the face of the bulkhead of the existing dock facility, now agreed on to be the location of the existing shoreline, said point being the northeast corner of Tract IV of this description, shown on the same plat as this Tract I and the southeast corner of this tract, said point having coordinates of N 17189367.17, E 1403379.78, Texas State Plane Coordinates, South Zone, NAD 83;

THENCE, along the south line of said Tract I, said line being the face of the bulkhead, the following calls;

N-82°-03'-17"-W, a distance of **1364.36'**;

N-69°-04'-59"-W, a distance of **79.86'**;

S-88°-09'-25"-W, a distance of **559.60'**;

THENCE, N-47°-31'-29"-W, continuing along said bulkhead line, a distance of **33.82'** to the point at which the bulkhead line meets the existing natural shoreline as determined by the 0.7' contour line, then continuing along said contour line the following calls;

S-47°-55'-30"-W, a distance of **15.27'**;

S-68°-58'-00"-W, a distance of **38.73'**;

N-64°-23'-51"-W, a distance of **27.79'**;

US 1580442v.3

N-73°-10'-44"-W, a distance of **62.07';**

S-76°-13'-49"-W, a distance of **43.76;**

S-87°-56'-22"-W, a distance of **41.82';**

S-70°-46'-41"-W, a distance of **64.04';**

S-73°-12'-49"-W, a distance of **126.80';**

S-62°-08'-19"-W, a distance of **160.68';**

S-60°-21'-58"-W, a distance of **85.26';**

S-74°-07'-34"-W, a distance of **97.00';**

N-89°-52'-20"-W, a distance of **119.54';**

N-89°-06'-15"-W, a distance of **26.69';**

**THENCE,** N-84°-55'-44"-W, continuing along the shoreline, a distance of **2.79'** to an unmarked point in the east boundary line of a called 98.44-acre tract described in a deed to Baker's Port, Inc. as recorded in Clerks File #353262, Real Property Records, San Patricio County, Texas for the northwest corner of said Tract IV and the southwest corner of this tract;

**THENCE,** N-21°-09'-21"-E, at 100.00' pass an OXY monument set on line for reference, at 156.92' pass a found concrete monument with a square brass plate, at 6308.78' pass an OXY monument set for the south right-of-way of F.M. 1069 as described in Clerks File #374150, Real Property Records, San Patricio County, Texas, in all a distance of **6628.43'** to a broken concrete monument found in the original south right-of-way of F.M. 1069 for the northeast corner of said 98.44-acre tract and for the northwest corner of this tract;

**THENCE,** N-88°-21'-05"-E, a distance of **3291.23'** to an OXY monument set for the most northerly northeast corner of this tract, said point being the point of curvature for a curve to the right from which the radius bears S-01°-38'-55"-E, 266.26, said curve having a central angle of 112°-57'-40" and a tangent of 401.98';

**THENCE,** along said curve and right-of-way, an arc length of **524.94'** to the **POINT OF BEGINNING** and containing 478.551-acres of land of which 6.849-acres are within the right-of-way of F.M. 1069.

## TRACT II
### (435.7 Acres)

A 435.7 acre tract of land, more or less, herein called Tract II, being the 258.879-acre "Exhibit A" in a correction deed to The Port of Corpus Christi Authority as recorded in Clerks File

US 1580442v.3

#512869, Real Property Records, San Patricio County, Texas, 74.71-acres as described in a deed to The Port of Corpus Christi Authority as recorded in Clerks File #353260, Real Property Records, San Patricio County, Texas, a called 98.44-acre tract described in a deed to The Port of Corpus Christi Authority as recorded in Clerks File #353262, Real Property Records, San Patricio County, Texas and a called 3.861-acre tract described in a quitclaim deed to The Port of Corpus Christi Authority as recorded in Clerks File #508819, Real Property Records, San Patricio County, Texas, all being out of the L. Von Zacharias Survey 1, Abstract 271, the T.H. Judson Survey 63, Abstract 177, the J. Robinson Survey, Abstract 225 and the T.T. Williamson Survey, Abstract 295, all in San Patricio County, Texas, said 435.7-acre tract being more particularly described by metes and bounds as follows:

**BEGINNING** at a broken concrete monument found in the original south right-of-way of F.M. Road 1069 for the northwest corner of a called 483.158-acre tract of land described as Tract I in a deed to the Department of the Navy as recorded in Volume 2081, Page 483, Deed Records, Nueces County, Texas and the northeast corner of this tract, said monument having coordinates of N 17195564.17, E 1402905.32, Texas State Plane Coordinates, South Zone, NAD 83;

**THENCE,** S-21°-09'-21"-W, at 162.72' pass a monument with a cap stamped "OXY Ingleside Property Holdings", herein after referred to as "an OXY monument", set at the time of this survey to replace the original found property marker in the existing south right-of-way of F.M. 1069 for the southeast corner of a tract described in Clerks File #383009, Real Property Records, San Patricio County, Texas, at 6471.50' pass a found concrete monument with a square brass plate previously set for reference, at 6528.43' pass an OXY monument set online for reference, in all a distance of **6628.43'** to an unmarked point on the existing shoreline for the southeast corner of this tract and being the beginning of the state land boundary as measured along the 0.7' contour;

**THENCE,** along the north line of a 29.26-acre tract, herein called Tract III, said line being the 0.7' contour as observed on this date, the following calls;

N-84°-55'-44"-W, a distance of **90.28'**;

N-80°-56'-04"-W, a distance of **90.53'**;

N-73°-42'-00"-W, a distance of **117.72'**;

N-76°-25'-18"-W, a distance of **94.85'**;

N-79°-09'-39"-W, a distance of **99.99'**;

N-81°-46'-03"-W, a distance of **83.76'**;

N-82°-55'-50"-W, a distance of **74.82'**;

S-85°-18'-45"-W, a distance of **71.05'**;

US 1580442v.3

S-89°-06'-28"-W, a distance of **75.93';**

S-89°-05'-16"-W, a distance of **91.98;**

N-83°-31'-46"-W, a distance of **125.10';**

N-67°-25'-49"-W, a distance of **95.44';**

**THENCE,** N-52°-26'-36"-W, a distance of **31.20'** to an unmarked point which is the point of intersection of the current shoreline and a line created to parallel the east line of this tract for the northwest corner of said Tract III and the southwest corner of this tract;

**THENCE,** N-21°-09'-21"-E, at 30.00' set an OXY monument online for reference, in all a distance of **71.36'** to an OXY monument set for the southwest corner of said 3.861-acre tract and an interior corner of this tract;

**THENCE,** N-01°-14'-20"-W, along a line which is the extension of the east right-of-way of Rustic Avenue as shown on the plat of Ingleside Townsite as recorded in Volume 5, Page 39, Map Records, San Patricio County, Texas, at 316.16' pass the northwest corner of said 3.861-acre tract and the southwest corner of said 258.879-acre tract, from this point continuing along said right-of-way as platted (70' r.o.w.), in all a distance of **898.51'** to an OXY monument set in the northeast right-of-way of Live Oak Street (50' r.o.w.) as shown on said plat for an interior corner of this tract;

**THENCE,** N-53°-28'-10"-W, along said right-of-way, a distance of **2425.49'** to an OXY monument set in the southeast right-of-way of Wildwood Drive (50' r.o.w.) as shown on said plat for an exterior corner in the west line of this tract;

**THENCE,** N-36°-31'-10"-E, along said right-of-way, a distance of **349.90'** to an OXY monument set in the northeast right-of-way of Ebony Street (49.90' r.o.w.) as shown on said plat for an interior corner in the west line of this tract;

**THENCE,** N-53°-28'-50"-W, along said right-of-way, a distance of **210.00'** to an OXY monument set for the south corner of Lot 1, Block 105, as shown on the old map of Ingleside Townsite as recorded in Volume 2, Pages 5 and 6, Map Records, San Patricio County, several blocks of which have been vacated except those portions of Blocks 105 and 93 as described in a Cession Agreement recorded in Clerks File 587749, Real Property Records, San Patricio County, Texas and for an exterior corner in the west line of this tract;

**THENCE,** N-36°-31'-10"-E, a distance of **300.00'** to an OXY monument set for the east corner of Lot 6 in said Block 105 and the southwest right-of-way of Fifteenth Street (unopened 49.90' r.o.w.) for an exterior corner in the west line of this tract;

**THENCE,** S-53°-28'-50"-E, along said right-of-way, a distance of **10.00'** to an OXY monument set in the centerline of a 20' wide alley shown on said plat for an interior corner in the west line of this tract;

US 1580442v.3

THENCE, N-36°-31'-10"-E, along the center of said alley, a distance of **150.32'** to an OXY monument set found for an interior corner in the west line of this tract;

THENCE, N-53°-28'-50"-W, at 10' pass the east corner of Lot 5, Block 93 of said subdivision, in all a distance of **149.64'** to an OXY monument set in the south right-of-way of Starlight Drive (50' r.o.w.) for the north corner of said Lot 5 and an exterior corner in the west line of this tract;

THENCE, N-36°-30'-45"-E, along said right-of-way, a distance of **2782.72'** to an OXY monument set in said east right-of-way of Rustic Avenue for an interior corner in the west line of this tract;

THENCE, N-01°-13'-43"-W, along said right-of-way, at 392.73 pass an OXY monument set in the existing south right-of-way of F.M. 1069, in all a distance of **402.73'** to an OXY monument set in the original south right-of-way of said F.M. 1069 for the northwest corner of this tract;

THENCE, N-88°-21'-05"-E, along said original right-of-way, a distance of **3609.81'** to the **POINT OF BEGINNING** and containing 435.7-acres of land of which 3.677-acres are within the right-of-way of F.M. 1069.

## TRACT III
### (29.26 Acres)

A 29.26 acre tract of submerged land, more or less, herein called Tract III, being out of the called 10.301.37-acre tract of submerged land conveyed by the State of Texas to Nueces County Navigation District No. 1 by Patent 217 dated January 24, 1950 as recorded in Volume 455, Page 586, Deed Records Nueces County, Texas, said 29.26-acre tract of submerged land being more particularly described by metes and bounds as follows:

BEGINNING at an unmarked point being the southeast corner of Tract II of this survey and the northeast corner of this Tract III, said point having coordinates of N 17189382.49, E 1400513.08, Texas State Plane Coordinates, South Zone, NAD 83;

THENCE, S-21°-09'-21"-W, along the west line of said Tract IV of this survey, a distance of **1196.58'** to a point in the Port of Corpus Christi bulkhead line for the southeast corner of this tract;

THENCE, N-76°-58'-15"-W, along said bulkhead line, a distance of **1116.29'** to a point for the southwest corner of this tract;

THENCE, N-21°-09'-21"-E, along a line created to be parallel with the east line of this tract, a distance of **1118.51'** to an unmarked corner on the existing shoreline for the northwest corner of this tract and being the beginning of the state land boundary as measured along the 0.7' contour, said point having coordinates of N 17189561.34, E 1399397.35, Texas State Plane Coordinates, South Zone, NAD 83;

**THENCE,** along the 0.7' contour as observed on this date and the south line of said Tract II of this survey, the following calls;

S-52°-26'-36"-E, a distance of **31.20';**

S-67°-25'-49"-E, a distance of **95.44';**

S-83°-31'-46"-E, a distance of **125.10';**

N-89°-05'-16"-E, a distance of **91.98';**

N-89°-06'-28"-E, a distance of **75.93';**

N-85°-18'-45"-E, a distance of **71.05';**

S-82°-55'-50"-E, a distance of **74.82';**

S-81°-46'-03"-E, a distance of **83.76;**

S-79°-09'-39"-E, a distance of **99.99';**

S-76°-25'-18"-E, a distance of **94.85';**

S-73°-42'-00"-E, a distance of **117.72';**

S-80°-56'-04"-E, a distance of **90.53';**

**THENCE,** S-84°-55'-44"-E, a distance of **90.28'** to the **POINT OF BEGINNING** and containing 29.26-acres by calculation.

### TRACT IV
(84.33 Acres)

An 84.33 acre tract of submerged land, more or less, herein designated Tract IV, being out of 93.457-acres of submerged land known as Tract II described in a deed to The Department of The Navy as recorded in Volume 2081, Page 483, Deed Records, Nueces County, Texas and being out of the called 10,301.37-acre tract of submerged land conveyed by the State of Texas to Nueces County Navigation District No. 1 by Patent 217 dated January 24, 1950 as recorded in Volume 455, Page 586, Deed Records, Nueces County, Texas, said 84.33-acre tract being more particularly described by metes and bounds as follows:

**BEGINNING** at an unmarked point being the southwest corner of Tract I of this survey and the northwest corner of this tract and being the beginning of the state land boundary as measured

along the 0.7' contour, said point having coordinates of N 17189382.49, E 1400513.08, Texas State Plane Coordinates, South Zone, NAD 83;

**THENCE,** along the south line of said Tract I and said 0.7' contour line, the following calls;

S-84°-55'-44"-E, a distance of **2.79'**;

S-89°-06'-15"-E, a distance of **26.69'**;

S-89°-52'-20"-E, a distance of **119.54'**;

N-74°-07'-34"-E, a distance of **97.00'**;

N-60°-21'-58"-E, a distance of **85.26'**;

N-62°-08'-19"-E, a distance of **160.68'**;

N-73°-12'-49"-E, a distance of **126.80'**;

N-70°-46'-41"-E, a distance of **64.04;**

N-87°-56'-22"-E, a distance of **41.82'**;

N-76°-13'-49"-E, a distance of **43.76'**;

S-73°-10'-44"-E, a distance of **62.07'**;

S-64°-23'-51"-E, a distance of **27.79'**;

N-68°-58'-00"-E, a distance of **38.73'**;

**THENCE,** N-47°-55'-30"-E, continuing along said shoreline to the point where it meets the bulkhead of the existing dock facility, now agreed on to be the location of the existing shoreline, a distance of **15.27'** and continuing along the face of the bulkhead the following calls;

S-47°-31'-29"-E, a distance of **33.82'**;

N-88°-09'-25"-E, a distance of **559.60'**;

S-69°-04'-59"-E, a distance of **79.86'**;

**THENCE,** S-82°-03'-17"-E, continuing along said bulkhead line, a distance of **1364.36'** to a point in the west line of a 8.86-acre tract described as Lease "A" in a deed to Flint Hills Resources Corpus Christi, LLC as recorded in Clerks File #606859, Official Public Records, San Patricio County, Texas for a southeast corner of said Tract I and the northeast corner of this tract,

US 1580442v.3

said point having coordinates of N 17189382.49, E 1400513.08, Texas State Plane Coordinates, South Zone, NAD 83;

**THENCE,** S-07°-57'-06"-W, along the west line of said Lease "A", a distance of **808.37'** to a point in the Port of Corpus Christi bulkhead line for the southwest corner of said Lease "A" and the southeast corner of this tract;

**THENCE,** S-77°-33'-29"-W, along said bulkhead line, a distance of **2350.24'** to a bend point in said bulkhead line and a bend point in the south line of this tract;

**THENCE,** N-76°-58'-15"-W, continuing along said bulkhead line, a distance of **915.24'** to a point for the southwest corner of this tract;

**THENCE,** N-21°-09'-21"-E, along a line parallel with the west line of said Tract I, a distance of **1196.58'** to the **POINT OF BEGINNING** and containing 84.33-acres by calculation.

## EXHIBIT B

EXHIBIT B TO THAT CERTAIN SETTLEMENT AGREEMENT
<u>BETWEEN CANYON AND PORT AUTHORITY</u>

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| IN RE: | § § | JOINTLY ADMINISTERED UNDER CASE NO. 12-20314 |
| CANYON PORT HOLDINGS, LLC, | § § | CHAPTER 11 |
| DEBTOR | § § | |

| | | |
|---|---|---|
| IN RE: | § § | CASE NO. 12-20484 |
| CANYON SUPPLY & LOGISTICS, LLC, | § § § | CHAPTER 11 |
| DEBTOR | § § | |

AGREED ORDER GRANTING JOINT AMENDED MOTION OF
CHAPTER 11 DEBTORS AND PORT OF CORPUS CHRISTI AUTHORITY
OF NUECES COUNTY, TEXAS TO (A) APPROVE COMPROMISE AND
SETTLEMENT PURSUANT TO BANKRUPTCY CODE § 363(b) AND
BANKRUPTCY RULES 6004, 9014, AND 9019 AND (B) GRANT RELIEF
FROM AUTOMATIC STAY UNDER BANKRUPTCY CODE § 362(d)
<u>AND BANKRUPTCY RULE 4001</u>

The Court considered the *Joint Amended Motion of Chapter 11 Debtors and Port of Corpus Christi Authority of Nueces County, Texas to (A) Approve Compromise and Settlement Pursuant to Bankruptcy Code § 363(b) and Bankruptcy Rules 6004, 9014, and 9019 and (B) Grant Relief from Automatic Stay Under Bankruptcy Code § 362(d) and Bankruptcy Rule 4001* [Docket No. ___] (the "Motion")[1] filed by Canyon Port Holdings, LLC ("Canyon Holdings"), Canyon Supply & Logistics, LLC ("Canyon Supply," and together with Canyon Holdings, "Canyon"), and the Port of Corpus Christi Authority of Nueces County, Texas (the "Port Authority," and together with Canyon, the "Movants"), at a hearing on October [__], 2012 (the "Settlement Hearing"). Following consideration of the evidence admitted and representations

---

[1] Capitalized terms used but not defined herein shall have the meaning given in the Settlement Agreement.

US 1580444v.1

made on the record at the Settlement Hearing, the Court makes the following findings of fact and

conclusions of law; any finding of fact may be considered a conclusion of law, and vice versa, as

appropriate:

A. Present at the Settlement Hearing were counsel to or representatives of the Debtors (including the Debtors' special litigation counsel), the Port Authority, the Managers, the Members, the Official Committee of Unsecured Creditors, and the United States Trustee;

B. The Court has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 1334(b) and 1334(e)(1);

C. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (G), (H), (K), (M), and (O);

D. The Movants, the Managers, the Members, the Official Committee of Unsecured Creditors of Canyon Holdings, and the United States Trustee have all consented to the entry of a final order on the Motion by this Court;

E. The relief requested in the Motion is (i) in the best interests of Canyon and their respective bankruptcy estates, creditors, and other parties in interest and (ii) supported by sound business reasons;

F. The Settlement Agreement and the Proposed Settlement set forth therein are fair and equitable and meet the standards established by the United States Court of Appeals for the Fifth Circuit set forth in *In re Jackson Brewing Co.,* 624 F. 2d 599 (5th Cir. 1980), and *The Cadle Co. v. Mims*, 608 F.3d 253 (5th Cir. 2010) and are a proper exercise of Canyon's business judgment;

G. In furtherance of the Settlement Agreement the Court finds cause to grant relief from the automatic stay of Bankruptcy Code § 362(d) as set forth below;

H. The compromise of claims and the releases given by Canyon and the Canyon bankruptcy estates, are a sale of property of the bankruptcy estates pursuant to Bankruptcy Code § 363 (b) and *The Cadle Co. v. Mims*, 608 F.3d 253 (5th Cir. 2010) to the Port Authority and Oxy Ingleside and the other Canyon Released Parties;

I. The Port Authority and Oxy Ingleside are good faith buyers within the meaning of Bankruptcy Code § 363(m);

J. Proper, sufficient, and adequate notice of the Motion and hearing thereon has been given in accordance with the Bankruptcy Code and the Federal Rules of

Bankruptcy Procedure,[2] and no other or further notice is necessary;

K.  All known creditors, equity interest owners, and other parties in interest have been set forth in (1) the Schedules of Assets and Liabilities, the Statements of Financial Affairs, the Amended Statements of Financial Affairs, and the Creditor Mailing List filed by Canyon Holdings at docket numbers 3, 12, 13, 20, and 68 in the Canyon Holdings case, and (2) the Schedules of Assets and Liabilities, the Statements of Financial Affairs, and the Creditor Mailing Lists filed by Canyon Supply at docket numbers 1, 5, and 10 of the Canyon Supply case, and notice of the Motion and the Settlement Hearing has been provided to all such creditors, equity interest owners, other parties in interest, and the Third Party Contract Parties;

L.  The relief granted herein is authorized under Bankruptcy Code §§ 105, 362(d), and 363(b), Bankruptcy Rules 4001, 6004, 9014, and 9019, and the other precedent and authority cited in the Motion; and

M.  Good and sufficient cause exists for the granting of the relief requested in the Motion after having given due deliberation upon the Motion and all of the proceedings before the Court in connection with the Motion.

Therefore, it is hereby

**ORDERED** that the Motion is **GRANTED**.  It is further

**ORDERED** that any objections to the Motion are **OVERRULED**.  It is further

**ORDERED** that the Settlement Agreement attached hereto as **Exhibit A** and the Proposed Settlement set forth therein, including, without limitation, the agreements, stipulations, releases, and sale of estate claims and property set forth therein, are approved and authorized in all respects in accordance with Bankruptcy Code §§ 105, 362(d), and 363(b) and Bankruptcy Rules 4001, 6004, 9014, and 9019.   It is further

**ORDERED** that relief from the automatic stay of Bankruptcy Code § 362(a) is hereby granted for all purposes to allow the consummation of the Settlement Agreement and the Proposed Settlement therein and to provide for the closing of all or any part of the Property to Oxy Ingleside under the Oxy Ingleside Contracts.  It is further

---

[2] *See Certificate of Service* [Docket No. __].

**ORDERED** that upon and after the occurrence of the Effective Date each and every federal, state, and local governmental agency or department is hereby directed to accept for filing and/or recording, and approve as necessary, any and all documents and instruments necessary and appropriate to consummate the transactions and releases contemplated by the Settlement Agreement. It is further

**ORDERED** that upon and after the occurrence of the Effective Date, the Port Authority is hereby authorized to file, register, or otherwise record a copy of this Order and/or the Settlement Agreement, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all interests of Canyon, the Canyon bankruptcy estates, the Managers, and the Members in the Property of any kind or nature whatsoever. It is further

**ORDERED** that the terms of the Settlement Agreement and this Order shall (i) not be altered, modified, extended, impaired, or affected by any plan of reorganization, plan of liquidation, or subsequent order, (ii) survive entry of any order that may be entered converting to chapter 7 or dismissing the Bankruptcy Cases, and (iii) be binding upon (a) the Canyon, their bankruptcy estates, and their successors and assigns, including any trustees or other fiduciaries hereafter appointed as legal representatives of Canyon or the Canyon bankruptcy estates or with respect to any property of the Canyon bankruptcy estates, whether under chapter 11 of the Bankruptcy Code or any subsequent chapter 7 case and (b) all creditors, equity interest owners, and other parties in interest in the Bankruptcy Cases. It is further

**ORDERED** that in the event that an order is entered, whether *sua sponte* by the Court or otherwise, dismissing or converting the Bankruptcy Cases to chapter 7, such order shall recognize that such dismissal or conversion shall not affect or diminish the rights or remedies of the parties under the Settlement Agreement or under this Order. It is further

**ORDERED** that the Settlement Agreement and the Proposed Settlement and releases contemplated thereby shall not be subject to rejection or avoidance by Canyon, the Canyon bankruptcy estates, or their respective affiliates, successors, and assigns, or any chapter 7 or chapter 11 trustee of Canyon or their bankruptcy estates.  It is further

**ORDERED** that this Court retains exclusive jurisdiction so long as the Bankruptcy Cases are pending to determine as a core proceeding (by motion and without necessity for an adversary proceeding) any proceeding, dispute, or controversy (i) to enforce and implement the terms and provisions of the Settlement Agreement (including a breach of the Settlement Agreement) and (ii) arising out of or related to this Order and the Settlement Agreement.  It is further

**ORDERED** that in the event of any inconsistency between the terms and provisions of this Order, the Motion, and the Settlement Agreement, the terms and provisions of the Settlement Agreement shall control unless explicitly provided otherwise herein.  It is further

**ORDERED** that Canyon is authorized and directed to take such actions as may be necessary and appropriate to implement the terms of the Settlement Agreement.

Dated: _____, 2012.

_____
RICHARD S. SCHMIDT
UNITED STATES BANKRUPTCY JUDGE

US 1580444v.1

## EXHIBIT B TO THAT CERTAIN SETTLEMENT AGREEMENT
## BETWEEN CANYON AND PORT AUTHORITY

**AGREED TO AND ACCEPTED BY:**

**Counsel to Canyon Holdings and Canyon Supply:**

/S/ _____
Shelby A. Jordan, SBT#11016700
Harlin C. Womble, Jr., SBT#21880300
Nathaniel Peter Holzer, SBT#00793971
JORDAN, HYDEN, WOMBLE, CULBRETH
& HOLZER, P.C.
500 North Shoreline Drive, Suite 900
Corpus Christi, TX 78401
Telephone: (361) 884-5678
Facsimile: (361) 888-5555

/S/ _____
Roger S. Braugh, Jr., SBT# 00796244
SICO, WHITE, HOELSCHER & BRAUGH, L.L.P.
802 N Carancahua St. Ste. 900
Corpus Christi, TX 78401-0013
Telephone: (361) 653-3300
Facsimile: (361) 653-3333

**Lawrence H. Ramming**

Individually and in his capacity as a representative
of an equity owner in and as a manager of Canyon Holdings and Canyon Supply

By: _____
Name: _____

**Richard Lee Fuqua, II**

Individually and in his capacity as a representative
of an equity owner in and as a manager of Canyon Holdings and Canyon Supply

By: _____
Name: _____

US 1580444v.1

**Jim Hayes**

Individually and in his capacity as a representative
of an equity owner in Canyon Holdings and Canyon Supply

By: _____
Name: _____

**Fuqua Family Limited Partnership**

As a member of and equity interest owner
in Canyon Holdings and Canyon Supply

By: _____
Name: _____
Title: _____

**LHR Trust**

As a member of and equity interest owner
in Canyon Holdings and Canyon Supply

By: _____
Name: _____
Title: _____

**CSL Associates, LLC**

As a member of and equity interest owner
in Canyon Holdings and Canyon Supply

By: _____
Name: _____
Title: _____

**Counsel to the Port Authority**:

/S/ _____

R. Glen Ayers, SBT# 01467500
Allen M. DeBard, SBT#24065132
LANGLEY & BANACK, INC.
745 E. Mulberry, Suite 900
San Antonio, Texas 78212
Telephone: (210) 736-6600
Facsimile: (210) 735-6889

**EXHIBIT B TO THAT CERTAIN SETTLEMENT AGREEMENT
BETWEEN CANYON AND PORT AUTHORITY**

**EXHIBIT A**

*[SETTLEMENT AGREEMENT]*

US 1580444v.1

## **EXHIBIT C**

EXHIBIT C TO THAT CERTAIN SETTLEMENT AGREEMENT
BETWEEN CANYON AND PORT AUTHORITY

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| IN RE: | § | JOINTLY ADMINISTERED UNDER |
| | § | CASE NO. 12-20314 |
| CANYON PORT HOLDINGS, LLC, | § | |
| | § | CHAPTER 11 |
| DEBTOR | § | |
| | § | |
| IN RE: | § | CASE NO. 12-20484 |
| | § | |
| CANYON SUPPLY & LOGISTICS, | § | CHAPTER 11 |
| LLC, | § | |
| | § | |
| DEBTOR | § | |

JOINT AMENDED MOTION OF CHAPTER 11 DEBTORS AND PORT OF CORPUS
CHRISTI AUTHORITY OF NUECES COUNTY, TEXAS TO (A) APPROVE
COMPROMISE AND SETTLEMENT PURSUANT TO BANKRUPTCY CODE § 363(b)
AND BANKRUPTCY RULES 6004, 9014, AND 9019 AND (B) GRANT RELIEF
FROM AUTOMATIC STAY UNDER BANKRUPTCY CODE § 362(d)
AND BANKRUPTCY RULE 4001

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT
YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY
CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF
YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE
A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU
MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE
DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE
WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT
FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED
WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE
MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST
ATTEND THE HEARING. UNLESS THE PARTIES AGREE
OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE
HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

TO THE HONORABLE RICHARD SCHMIDT, UNITED STATES BANKRUPTCY
JUDGE:

Canyon Port Holdings, LLC ("Canyon Holdings"), Canyon Supply & Logistics, LLC

("Canyon Supply," and together with Canyon Holdings, "Canyon"), and the Port of Corpus

## EXHIBIT C TO THAT CERTAIN SETTLEMENT AGREEMENT
## BETWEEN CANYON AND PORT AUTHORITY

Christi Authority of Nueces County, Texas (the "Port Authority," and together with Canyon, the "Movants") file this *Joint Amended Motion of Chapter 11 Debtors and Port of Corpus Christi Authority of Nueces County, Texas to (A) Approve Compromise and Settlement Pursuant to Bankruptcy Code § 363(b) and Bankruptcy Rules 6004, 9014, and 9019 and (B) Grant Relief from Automatic Stay Under Bankruptcy Code § 362(d) and Bankruptcy Rule 4001* (this "Motion"),[1] and respectfully show as follows:

## I.
## INTRODUCTION

1.      Attached as **Exhibit A** is a Settlement Agreement that is dated as of September 26, 2012 (the "Settlement Agreement"). The Settlement Agreement sets forth the specific terms of a compromise and settlement of claims and allegations (the "Proposed Settlement") by and among (i) the Movants, (ii) Lawrence H. Ramming, individually and in his capacity as a representative of an equity owner in and as a manager of Canyon Holdings and Canyon Supply ("Ramming"), (iii) Richard Lee Fuqua, II, individually and in his capacity as a representative of an equity owner in and as a manager of Canyon Holdings and Canyon Supply ("Fuqua,"), (iv) Jim Hayes, individually and in his capacity as a representative of an equity owner in Canyon Holdings and Canyon Supply ("Hayes," and together with Fuqua and Ramming, the "Managers"), (v) Fuqua Family Limited Partnership, a Texas limited partnership, as a member of and equity interest owner in Canyon Holdings and Canyon Supply ("FFLP"), (vi) LHR Trust, as a member of and equity interest owner in Canyon Holdings and Canyon Supply ("LHRT"), (vii) CSL Associates, LLC, a Texas limited liability company, as a member of and equity interest owner in Canyon Holdings and Canyon Supply ("CSLA" and together with LHRT and FFLP,

---

[1] This Motion supersedes and replaces the *Emergency Motion of Chapter 11 Debtors Under Fed.R.Bankr.P. 9019(a) to Approve Compromise and Settlement* [Docket No. 53] that was filed by Canyon on September 13, 2012.

## EXHIBIT C TO THAT CERTAIN SETTLEMENT AGREEMENT
## BETWEEN CANYON AND PORT AUTHORITY

the "Members"), and (viii) Oxy Ingleside Property Holdings, LLC, a Delaware limited liability

company ("Oxy Ingleside").

2.      The Settlement Agreement and the Proposed Settlement set forth therein

contemplates, *inter alia*, a $3.5 million payment by the Port Authority to Canyon Holdings, for

the benefit of itself, Canyon Supply, and the Canyon bankruptcy estates, in exchange for releases

and a compromise and settlement of controversies among the parties to the Settlement

Agreement. *See* Settlement Agreement, ¶ 2(a) and ¶ 2(b). This exchange is effectively a sale of

estate property.

3.      The Movants believe that the Settlement Agreement and the Proposed Settlement

set forth therein are fair, equitable, and in the best interests of both bankruptcy estates. Further,

Canyon believes that entry into the Settlement Agreement is a reasonable exercise of its business

judgment. Accordingly, the Movants respectfully request that the Settlement Agreement and the

Proposed Settlement set forth therein be approved and that relief from the automatic stay of

Bankruptcy Code § 362(a) be granted by entry of the proposed agreed order attached hereto as

**Exhibit B**.

## II.
## JURISDICTION AND CORE ALLEGATIONS

4.      This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334.

This is a core proceeding under 28 U.S.C. § 157(b)(A), (B), (G), (H), (K), (M), and (O). As a

core matter, this Court is authorized to enter a final order subject to review under 28 U.S.C. §

158. Approval of this settlement is sought pursuant to 11 U.S.C. §§ 105, 362 (d), and 363(b) and

Federal Rules of Bankruptcy Procedure 4001, 6004, 9014, and 9019(a). Notice has been given

to all creditors and parties in interest of the Canyon bankruptcy estates, including interest

holders. The Movants consent to the entry of a final order by this Court. The Official

## EXHIBIT C TO THAT CERTAIN SETTLEMENT AGREEMENT
## BETWEEN CANYON AND PORT AUTHORITY

Committee of Unsecured Creditors appointed in the Canyon Holdings case has been consulted and has expressed no objection to the entry of a final order by this Court. The Office of the United States Trustee has likewise been consulted and consents to the entry of a final order by this Court.

### III.
### FACTS

**A.     The Debtors**

5.     A Certificate of Formation Limited Liability Company [Document No. 270464800002] was filed with the Office of the Secretary of State of Texas (the "Secretary of State") on August 4, 2009, forming a Texas limited liability company whose name was Canyon Logistics & Supply, LLC.     Thereafter, a Certificate of Correction [Document No. 302092300002] was filed with the Secretary of State on April 5, 2010, in which the entity name was corrected to read Canyon Supply & Logistics, LLC.     Subsequently, a Certificate of Amendment [Document No. 400707850002] was filed with the Secretary of State on December 14, 2011, pursuant to which Canyon Supply & Logistics, LLC changed its entity name to Canyon Port Holdings, LLC.

6.     Canyon Supply filed its Certificate of Formation Limited Liability Company [Document No. 400903430002] with the Secretary of State on December 15, 2011. Canyon Supply is an affiliate of Canyon Holdings and is owned by the same members and managed by the same managers as Canyon Holdings.

**B.     The Property**

7.     The Port Authority owns fee interests in certain real property commonly known as the former Naval Station Ingleside and certain undeveloped real property adjacent thereto, located in Nueces and San Patricio Counties, Texas and more specifically described on Exhibit A

## EXHIBIT C TO THAT CERTAIN SETTLEMENT AGREEMENT
## BETWEEN CANYON AND PORT AUTHORITY

of the Settlement Agreement (all such property, together with all improvements, buildings, wharfs, quays, piers, bulkheads, docks (together with any breasting or mooring structures associated therewith), fixtures, walls, fences, landscaping, infrastructure, utilities and related facilities, and any personal property or other structures situated on, affixed to, or appurtenant to such property (as applicable), is herein collectively called the "Property").

**C.    The Port Authority and the Transactions**

8.    Canyon Holdings entered into that certain Surplus Property Installment Sales Agreement dated May 2, 2011 (as the same may have been amended and/or modified, the "First Canyon Contract") with the Port Authority to purchase a portion of the Property.  The First Canyon Contract was terminated by Canyon Holdings on September 29, 2011.

9.    Canyon Holdings subsequently entered into that certain Surplus Property Installment Sales Agreement dated November 8, 2011 (as the same may have been amended and/or modified, the "Second Canyon Contract") with the Port Authority to purchase a portion of the Property, and on November 8, 2011, the Port Authority's governing body approved an Option Agreement with Canyon Holdings (the "Option Agreement," and together with the First Canyon Contract and the Second Canyon Contract, the "Canyon Contracts") which would have given Canyon Holdings an option to purchase portions of the Property if the Second Canyon Contract had closed.

10.    Pursuant to that certain Assignment of Surplus Property Installment Sales Agreement dated December 28, 2011, Canyon Holdings assigned to Canyon Supply all of Canyon Holdings' interest in and rights under the Second Canyon Contract and the Property covered thereby.

11.    The Port Authority sent a notice of termination of the Second Canyon Contract on January 16, 2012.

## EXHIBIT C TO THAT CERTAIN SETTLEMENT AGREEMENT
## BETWEEN CANYON AND PORT AUTHORITY

12.     Oxy Ingleside and the Port Authority entered into that certain Surplus Property

Sales Agreement dated May 8, 2012 (as the same may have been or may hereafter be amended

and/or modified, the "First Oxy Ingleside Contract") and that certain Surplus Property Sales

Agreement dated September 11, 2012 (as the same may have been or may hereafter be amended

and/or modified, the "Oxy Ingleside Campus Contract," and together with the First Oxy

Ingleside Contract, the "Oxy Ingleside Contracts"). The Oxy Ingleside Contracts set forth the

terms and conditions upon which the Port Authority will sell to Oxy Ingleside a portion of the

Property.

### D.     The Bankruptcies and the Schedules

13.     On June 10, 2012, Canyon Holdings filed a voluntary petition for relief under

chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States

Bankruptcy Court for the Southern District of Texas, Corpus Christi Division (the "Bankruptcy

Court"). On September 10, 2012, Canyon Supply filed a voluntary petition for relief under

chapter 11 of the Bankruptcy Code in the Bankruptcy Court. Canyon Holdings' and Canyon

Supply's respective bankruptcy cases (collectively, the "Bankruptcy Cases") are jointly

administered.

14.     Canyon Holdings filed its initial Schedules and Statement of Affairs on July 9,

2012. On August 6, 2012, Canyon Holdings amended its Schedules to allege that it owned an

interest in portions of the Property and that the Second Canyon Contract remained executory and

would be assumed by Canyon Holdings.

### E.     The Motion Concerning Automatic Stay Filed by the Port Authority

15.     Because Canyon Holdings asserted an interest in both the Second Canyon

Contract and portions of the Property, it appeared that the automatic stay of Bankruptcy Code §

362 might prohibit the transfer of the Property to Oxy Ingleside. Because of Canyon's assertion,

## EXHIBIT C TO THAT CERTAIN SETTLEMENT AGREEMENT
## BETWEEN CANYON AND PORT AUTHORITY

the Port Authority was not able to satisfy certain conditions under the First Oxy Ingleside

Contract and, as a result, the closing under that agreement was delayed.

16.     In order to secure a legal determination by the Bankruptcy Court allowing the

Port Authority to proceed with the closing of the sale of the majority of the Property to Oxy

Ingleside pursuant to the First Oxy Ingleside Contract, the Port Authority filed its *Motion*

*Concerning Automatic Stay* [Docket No. 23] (the "Stay Motion") on August 18, 2012. The Stay

Motion asserts, *inter alia*, that (i) the Second Canyon Contract was terminated and is no longer

executory, (ii) Bankruptcy Code § 365(c) (2) bars the assumption by Canyon of the Second

Canyon Contract because the Second Canyon Contract is an installment sales contract and such

contracts may not be assumed by a trustee or debtor-in-possession, and (iii) Canyon does not

own any interest in the Property.

**F.     Factual Justification for the Settlement Agreement and the Proposed Settlement**
**Therein**

17.     After much negotiation, the parties entered into the Settlement Agreement to,

*inter alia*, compromise and settle Canyon's assertion of an interest in all or any portion of the

Property, to resolve claimed rights to specific performance under the Canyon Contracts, to agree

upon a resolution of the claims asserted by Canyon against the Port Authority, Oxy Ingleside,

and other persons and entities relating to the Canyon Contracts and terminations thereof, to limit

the risks, uncertainties, and inconvenience of litigation and appeals, and to resolve, inter alia, (i)

any and all claims, causes of action, and liabilities asserted or that could have been asserted by

Canyon, the Canyon bankruptcy estates, the Managers, or the Members against (a) the Port

Authority, (b) Oxy Ingleside, or (c) the Property; (ii) any and all claims, causes of action, and

liabilities asserted or that could have been asserted by the Port Authority against Canyon, the

Canyon bankruptcy estates, the Managers, or the Members; and (iii) any and all claims, causes of

## EXHIBIT C TO THAT CERTAIN SETTLEMENT AGREEMENT
### BETWEEN CANYON AND PORT AUTHORITY

action, and liabilities asserted or that could have been asserted by Oxy Ingleside against Canyon, the Canyon bankruptcy estates, the Managers, or the Members.

18.     From the perspective of the Port Authority, the Settlement Agreement and the Proposed Settlement set forth therein will allow an almost immediate closing of the sale of the majority of the Property to Oxy Ingleside under the First Oxy Ingleside Contract upon satisfaction of the conditions set forth therein.   This sale will generate $82,000,000 in cash proceeds, and Oxy Ingleside's development will provide employment and generate sales tax revenues across the region.

19.     Canyon Holdings will also receive a significant infusion of cash for the benefit of itself, Canyon Supply, and their creditors.

### IV.
### TERMS OF THE SETTLEMENT

20.     The terms of the Proposed Settlement are set forth in the attached Settlement Agreement.   However, a summary of the basic terms of the Settlement Agreement and the Proposed Settlement set forth therein is set forth below:[2]

•      On the Effective Date, the Port Authority shall pay $3,500,000 to Canyon Holdings, for the benefit of itself, Canyon Supply, and the Canyon bankruptcy estates (the "Settlement Payment").   The Settlement Payment shall be made by wire transfer. *See* Settlement Agreement, ¶ 2(a).

•      Effective upon the Effective Date (and subject to the full and actual receipt of the Settlement Payment by Canyon Holdings), Canyon, the Canyon bankruptcy estates, the Managers, and the Members each agree and stipulate that: (i) they do not own or hold any interest in all or any portion of the Property, including, without limitation, any right or option to acquire all or any portion of the Property, whether legal, equitable, or otherwise, and any such interest has been released, extinguished, and expunged; (ii) no portion of the Property is property of the Canyon bankruptcy estates; (iii) they have no right to specific performance to be conveyed an interest in all or any portion of the Property and any such right

---

[2] This is a summary only and is modified in its entirety by the terms of the Settlement Agreement.   Capitalized terms used but not defined in this summary shall have the meaning given in the Settlement Agreement.

**EXHIBIT C TO THAT CERTAIN SETTLEMENT AGREEMENT
BETWEEN CANYON AND PORT AUTHORITY**

has been released, extinguished, and expunged; (iv) the Canyon Contracts are not executory contracts subject to assumption and/or assignment under Bankruptcy Code § 365; (v) the Canyon Contracts have been terminated and are null, void, and of no further force or effect; and (vi) neither the Port Authority nor Oxy Ingleside has received any transfer of an interest in property of Canyon, the Canyon bankruptcy estates, the Managers, or the Members that is avoidable or recoverable under chapter 5 of the Bankruptcy Code or similar state statutes. In the event that the Effective Date does not occur, the above stipulations shall be null, void, inoperative and inadmissible for any purpose. *See* Settlement Agreement, ¶ 2(b).

● The Settlement Agreement includes mutual releases among the Parties. *See* Settlement Agreement, ¶¶ 3, 4, 5, 6, and 7.

● The Port Authority Released Parties, the Canyon Released Parties, the Oxy Ingleside Released Parties, the Manager Released Parties, the Member Released Parties, and any title insurance companies or title insurance agents that issue a title insurance policy in favor of Oxy Ingleside related to all or any portion of the Property are third party beneficiaries of the Settlement Agreement. *See* Settlement Agreement, ¶ 14.

● The Effective Date of the Settlement Agreement is subject to the following conditions precedent: (a) entry by the Bankruptcy Court of an order (that shall have become a final and non-appealable order and not subject to a stay) approving the Settlement Agreement pursuant to Bankruptcy Code §§ 105, 362(d), and 363(b) and Bankruptcy Rules 4001, 6004, 9014, and 9019 and granting relief from the automatic stay of Bankruptcy Code § 362(a), (b) Oxy Ingleside (or an affiliate, successor, or assignee of Oxy Ingleside) shall have closed on its acquisition of the applicable portion of the Property set out in the First Oxy Ingleside Contract, and (c) the Settlement Payment, in good funds, shall have been received by Canyon Holdings, as evidenced by a bank wire transfer confirmation number in the form of a federal reference number or a CHIPS sequence number. *See* Settlement Agreement, ¶ 11.

21.     To comply with and effectuate the terms of the Settlement Agreement, the

Movants request that the Court grant relief from the automatic stay of Bankruptcy Code § 362(a)

to allow the consummation of the Settlement Agreement and the Proposed Settlement therein

and to provide for the closing of the sale of all or any part of the Property to Oxy Ingleside under

the Oxy Ingleside Contracts. *See* Proposed Order, pg. 2.

## EXHIBIT C TO THAT CERTAIN SETTLEMENT AGREEMENT
## BETWEEN CANYON AND PORT AUTHORITY

### V.
### LEGAL AUTHORITY SUPPORTING RELIEF REQUESTED

22.     Pursuant to Bankruptcy Code §§ 105(a), 362(d), and 363(b) and Bankruptcy

Rules 4001, 6004, 9014, and 9019(a), this Court may approve the compromise reached by

Movants.  "One of the goals of Congress in fashioning the Bankruptcy Code was to encourage

parties in a distress situation to work out a deal among themselves." *In re Mirant Corp.*, 334

B.R. 800, 811 (Bankr. N.D. Tex. 2005).  Compromises are favored in bankruptcy because they

minimize litigation costs and further the parties' interest in expediting the administration of a

bankruptcy case.  *In re Martin,* 91 F.3d 389, 393 (3d Cir. 1996), *quoting* 9 COLLIER ON

BANKRUPTCY ¶ 9019.03[1] (15th ed. Rev. 1993).

23.     Bankruptcy Rule 9019(a) provides that "[o]n motion by the trustee and after

notice and a hearing, the court may approve a compromise and settlement.  The rule empowers a

bankruptcy court to approve compromises and settlements if they are 'fair and equitable and in

the best interest of the estate.'"  *In re Cajun Elec. Power Coop., Inc.,* 119 F.3d 349, 355 (5th Cir.

1997); *In re Foster Mortgage Corp.,* 68 F. 3d 914, 917 (5th Cir. 1995).  Moreover, Bankruptcy

Code § 105(a) states that "[t]he court may issue any order, process, or judgment that is necessary

or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

24.     Approval is left to the sound discretion of the reviewing court.  *See, e.g. In re*

*Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998) (holding that courts should

exercise their discretion "in light of the general public policy favoring settlements.").  The

burden of establishing the fairness of a compromise rests on the proponent(s); however, a debtor

in possession or trustee is not required to present a full mini-trial or evidentiary hearing to

adjudicate the issues being settled.  Rather, when determining whether to approve the

compromise, the Bankruptcy Court is not to decide the numerous questions of law and fact raised

## EXHIBIT C TO THAT CERTAIN SETTLEMENT AGREEMENT
## BETWEEN CANYON AND PORT AUTHORITY

but is to canvass the issues and see whether the settlement falls below the lowest point in the

range of reasonableness. *ARS Brook, LLC, v. Jalbert (In re ServiSense.com, Inc.),* 382 F.3d 68.

72 (1st Cir. 2004).

      25.    In determining whether a proposed compromise is fair and equitable, the

Bankruptcy Court should consider the factors set out in *Protective Comm. for Indep.*

*Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424 (1968), which include:

         ●    The probabilities of ultimate success should the claim be litigated;

         ●    An educated estimate of (i) the complexity, expense, and likely duration of such litigation, (ii) possible difficulties of collecting on any judgment which might be obtained, and, (iii) all other factors relevant to a full and fair assessment of the wisdom of the compromise; and

         ●    A comparison of the terms of the settlement and compromise with the likely rewards of litigation.

      26.    Over 30 years ago, the Fifth Circuit, in a case filed under the Bankruptcy Act of

1898, added two other considerations: the reviewing court should also consider uncertainties of

fact or law which would impact the litigation and the delay and inconvenience of the litigation.

*See Matter of Jackson Brewing Co.,* 624 F. 2d 599, 604 (5th Cir. 1980).

      27.    Furthermore, pursuant to the Fifth Circuit's decision in *The Cadle Co. v. Mims*,

608 F.3d 253, 264-265 (5th Cir. 2010), a proposed compromise and settlement is in essence a

sale of estate property to the defendant. Accordingly, the Movants respectfully request that the

Court authorize the compromise and settlement pursuant to Bankruptcy Code § 363(b) as a sale

of property.

      28.    Bankruptcy Code § 363(b) provides that a debtor-in possession may use, sell, or

lease, other than in the ordinary course of business, property of the estate. 11 U.S.C. § 363(b).

The proposed use, sale or lease of property of the estate may be approved under Bankruptcy

Code § 363(b) if it is supported by sound business justification. *See e.g. Institutional Creditors*

## EXHIBIT C TO THAT CERTAIN SETTLEMENT AGREEMENT
## BETWEEN CANYON AND PORT AUTHORITY

*of Continental Air Lines, Inc. v. Continental Air Lines, Inc. (In re Continental Air Lines)*, 780

F.2d 1223, 1226 (5th Cir. 1986) ("[F]or a debtor-in-possession..to satisfy its fiduciary duty to the

debtor, creditors and equity holders, there must be some articulated business justification for

using, selling, or leasing the property outside the ordinary course of business."); *see also In re*

*Crutcher Resources Corp.*, 72 B.R. 628, 631 (Bankr. N.D. Tex. 1987) ("A Bankruptcy Judge has

considerable discretion in approving a § 363(b) sale of property of the estate other than in the

ordinary course of business, but the movant must articulate some business justification for the

sale.).

29.    In addition, Bankruptcy Code § 362 (d) (1) permits the Court to lift the automatic

stay of Bankruptcy Code § 362(a) for "cause."  11 U.S.C. § 362(d)(1).  "Cause" for purposes of

Bankruptcy Code § 362(d)(1) is "an intentionally broad and flexible concept that permits the

court to respond to inherently fact-sensitive situations." *In re Texas State Optical, Inc.*, 188 B.R.

552, 556 (Bankr. E.D. Tex. 1995).

30.    After review of the factors for approving the Settlement Agreement and the

Proposed Settlement set forth therein pursuant to Bankruptcy Code §§ 105, 362(d), and 363(b)

and Bankruptcy Rules 4001, 6004, 9014, and 9019, the Settlement Agreement and the Proposed

Settlement set forth therein should be approved for numerous reasons, including, but not limited

to, the following:

> •    Should litigation between the Movants continue, the result is uncertain,
> and the Canyon bankruptcy estates might possibly receive significantly less funds
> than they are to receive under the Settlement Agreement and the Proposed
> Settlement set forth therein;
>
> •    Litigation will be expensive for all Movants, and such litigation has the
> potential to be of significant duration;
>
> •    Additional delay to reach a judgment in the litigation could cause
> significant adverse economic consequences for all parties;

## EXHIBIT C TO THAT CERTAIN SETTLEMENT AGREEMENT
## BETWEEN CANYON AND PORT AUTHORITY

- All Movants are represented by counsel and have reviewed, and understand, the agreements contained within the Settlement Agreement;

- The Settlement Agreement and the Proposed Settlement therein are supported by Canyon's sound business judgment because of the potential that litigation of these claims will result in less proceeds for Canyon's bankruptcy estates than they will receive under the Settlement Agreement and the Proposed Settlement set forth therein;

- The Port Authority and Oxy Ingleside will be "good faith" purchasers within the meaning of Bankruptcy Code §363(m) as they will have effectively reached a negotiated purchase from the Canyon and the Canyon bankruptcy estates of claims alleged by Canyon and the Canyon bankruptcy estates against the Port Authority and Oxy Ingleside; and

- Cause exists to grant relief from the automatic stay of Bankruptcy Code § 362(a) because the Settlement Agreement and the Proposed Settlement set forth therein include agreements and stipulations that Canyon and their bankruptcy estates do not own any interest in the Property and have no right to obtain an interest in the Property in the future.

### VI.
### CONCLUSION AND REQUEST FOR RELIEF

31.     The factual recitations and terms of the compromise as summarized herein and set forth in the Settlement Agreement clearly support an order approving the Settlement Agreement and the Proposed Settlement set forth therein.  Given the complexities of the issues and the stakes involved, the parties have reached a reasonable settlement which this Court should approve.

32.     The Movants respectfully request the Court to enter its order approving the Settlement Agreement and the Proposed Settlement set forth therein and granting relief from the automatic stay of Bankruptcy Code § 362(a).

## EXHIBIT C TO THAT CERTAIN SETTLEMENT AGREEMENT
## BETWEEN CANYON AND PORT AUTHORITY

RESPECTULLY SUBMITTED,

WELDER LESHIN, LLP
800 North Shoreline Blvd.
Suite 300 North Tower
Corpus Christi, Texas  78401
Telephone:  (361) 561-8000
Facsimile:  (361) 561-8001
/S/ *Leo James Welder*
LEO JAMES WELDER
State Bar No. 21127500

LAW OFFICES OF MICHAEL B SCHMIDT
555 N Carancahua St. Ste/ 1550
Corpus Christi, TX 78401
Telephone:  (361) 884-9949
Facsimile: (361) 884-6000


/S/ *Michael B. Schmidt*
MICHAEL B. SCHMIDT
State Bar No. 177755200
Federal Bar. No. 10260


LANGLEY & BANACK, INC.
745 E. Mulberry, Suite 900
San Antonio, Texas  78212
Telephone:  (210) 736-6600
Facsimile:  (210) 735-6889

## EXHIBIT C TO THAT CERTAIN SETTLEMENT AGREEMENT
## BETWEEN CANYON AND PORT AUTHORITY

/S/ *R. Glen Ayers*
R. GLEN AYERS
State Bar No.  01467500
Federal Bar No. 9504
ALLEN M. DEBARD
State Bar No. 24065132


JORDAN, HYDEN, WOMBLE, CULBRETH
& HOLZER, P.C.
500 North Shoreline Drive, Suite 900
Corpus Christi, TX  78401
Telephone:  (361) 884-5678
Facsimile:  (361) 888-5555


/S/ *Harlin C. Womble, Jr.*
SHELBY A. JORDAN
State Bar No. 11016700
S.D. No. 2195
HARLIN C. WOMBLE, JR.
State Bar No. 21880300
S.D. No. 8959
NATHANIEL PETER HOLZER
State Bar No. 00793971
S.D. No. 21503

## EXHIBIT C TO THAT CERTAIN SETTLEMENT AGREEMENT
## BETWEEN CANYON AND PORT AUTHORITY

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served in accordance with the Federal Bankruptcy Rules on all parties listed on the attached service list on this 26th day of September, 2012.

/S/  *Harlin C. Womble, Jr.*
Harlin C. Womble, Jr.

Allco, LLC
6720 College
Beaumont TX 77707

DeLange, Hudspeth, McConnell & Tibbets
1177 West Loop South
Suite 1700
Houston TX 77027

Frontier Surveying Company
Attn: Joe Hopkins
710 Buffalo St,, Suite 700
Corpus Christi TX 78401

Belaire Environmental, Inc.
Attn: Charles E. Belaire
P. O. Box 741
Rockport TX 7838-0741

Charles Muchmore
1802 Ennis Joslin Rd., Apt. 328
Corpus Christi TX 78412

Galway Energy Advisors, LLC
Attn: Jeff Pendergraft
3050 Post Oak Blvd., Suite 1300
Houston TX 77056

Brown & Caldwell
One Westchase Center
10777 Westheimer Rd., Suite 925
Houston TX 77042

Michael Castro
Casco Resources, LLC
719 Upper N. Broadway #120
Corpus Christi TX 78401

Wood, Boykin & Wolter
615 N. Upper Broadway
Suite 1100
Corpus Christi TX 78401-0748

TXSER
c/o John Bullard
8459 Fern Lake Court
Fort Worth TX 76139

American Ad Valorem Tax
Consultants, Inc.
P. O. Box 6330
Corpus Christi TX 78466-6330

Absolute Communications &
Network Solutions
P. O. Box 271563
Corpus Christi TX 78427

Lawrence H. Ramming, Chairman
Canyon Port Holdings, LLC
5005 Riverway, Suite 250
Houston TX 77056

Richard L. Fuqua, II
Fuqua & Associates, PC
5005 Riverway, Suite 250
Houston TX 77056

Barbara C. Jue
Office of U.S. Trustee
606 N. Carancahua, Suite 1107
Corpus Christi TX 78401

Allco, LLC
P. O. Box 3684
Beaumont TX 77704-3684

Macon Strother
The Strother Law Firm
4545 Mt. Vernon
Houston TX 77006-5815

McDermott, Inc.
Attn: Daniel M. Houser
757 N. Eldridge Pkwy.
Houston TX 77078-4526

McDermott, Inc.
Attn: Bruce W Schoolfield
757 N. Eldridge Pkwy.
Houston TX 77079-4526

Internal Revenue Service
Centralized Insolvency Operations
P.O. Box 7346
Philadelphia PA 19101-7346

Buckley & Associates, PC
101 N. Shoreline Blvd., Suite 500
Corpus Christi TX 78401

(ecf) Patrick H. Autry
Branscomb PC
9901 IH-10 West, Suite 800
San Antonio TX 78230

(ecf) Glen Ayers
Langley & Banack Incorporated
Trinity Plaza II, 9th Floor
745 East Mulberry
San Antonio TX 78212-3166

(ecf)Ron Simank
Schauer & Simank, PC
615 North Upper Broadway
Suite 700
Corpus Christi TX 78401-0781

Port of CC Authority
c/o Leo James Welder
800 North Shoreline, Suite 300
Corpus Christi TX 78401

Texas Workforce Commission
Bankruptcy Unit, Room 556
101 E. 15th Street
Austin TX 78778-0001

(ecf) Mike Schmidt
Law Office of Michael B. Schmidt
555 N. Carancahua, Suite 1550
Corpus Christi TX 78401

Safeharbor Investors
8137 Gladys Ave., #102
Beaumont TX

Waller Marine
ATTN: David B. Waller
14410 West Sylvanfield Drive
Houston TX 77014

Waller Max Holdings, LLC
ATTN: David B. Waller
14410 West Sylvanfield Drive
Houston TX 77014

Diversity Max
Attn: Jeffrey A. Greenwalt
815 East 65th Street, Suite 200
Indianapolis  IN  46220

Max Financial, LLC
Attn: Jeffrey A. Greenwalt
815 East 65th Street, Suite 200
Indianapolis  IN  46220

E. Scott Treadway
11805 North Pennsylvania Street
Suite 163
Carmel  IN  46032